

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-467-CV**

GRANBURY MINOR EMERGENCY                                    APPELLANTS
CLINIC AND ABEL SALAS, M.D.

V.

TEAGAN THIEL                                                    APPELLEE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

This is an interlocutory appeal challenging (1) the adequacy of an expert report prepared by William W. Spangler, M.D., FACEP addressing the alleged negligence of Appellant Abel Salas, M.D. and (2) the trial court's failure to award attorney's fees after dismissing with prejudice Appellee Teagan Thiel's claims against Appellant Granbury Minor Emergency Clinic. For the reasons set forth below, we hold that the trial court did not abuse its discretion by

determining that Dr. Spangler's report was adequate but did abuse its discretion by failing to award attorney's fees to the Clinic; accordingly, we will reverse the portion of the trial court's order awarding no attorney's fees to the Clinic and remand the issue of attorney's fees to the trial court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2006, Thiel sought treatment at the Clinic and was seen by Dr. Salas. Thiel complained of abdominal pain and vomiting. Without performing a physical examination or diagnostic testing, Dr. Salas diagnosed Thiel as suffering from food poisoning and sent her home with a prescription for an antibiotic.

Thiel's symptoms continued to worsen, and she went back to the Clinic on September 6, 2006. At that time, Thiel was still suffering from abdominal pain, which had localized to her right side. Dr. Salas diagnosed Thiel with a urinary tract infection and gave her a prescription for an antibiotic.

When Thiel's symptoms still did not improve, she went on September 14, 2006 to see her primary care physician who immediately ordered a CT scan to rule out appendicitis. The CT scan confirmed appendicitis, and Thiel was taken into surgery later that day. The surgery revealed that Thiel's appendix had ruptured and had become gangrenous and that she was suffering from an intra-abdominal abscess caused by the ruptured appendix. Because the abscess

2

significantly involved Thiel's colon, she underwent a partial hemicolectomy with anastomisis. Following the surgery, Thiel underwent additional surgeries secondary to the delayed diagnosis of her appendicitis.

Thiel filed suit and timely served a seven-page, single-spaced expert report by Dr. Spangler along with his four-page curriculum vitae. Appellants filed a motion to dismiss with prejudice. Appellants generally denied Thiel's allegations and specifically denied that the Clinic is "in any way a legal entity subject to liability." Appellants asserted objections to Dr. Spangler's qualifications and to the substance of his report, specifically its purported failure to address the elements of standard of care, breach, and causation concerning Thiel's health care liability claims.

After a hearing, the trial court sustained the Clinic's objections to Dr. Spangler's report and dismissed with prejudice Thiel's claims against the Clinic; the trial court found that the reasonable and necessary attorney's fees for the Clinic were $0. The trial court overruled Dr. Salas's objections to Dr. Spangler's report and denied his motion to dismiss. This appeal followed.

### III. DR. SPANGLER'S REPORT MEETS CHAPTER 74 CRITERIA

In Appellants' first issue, Dr. Salas argues that the trial court abused its discretion by failing to dismiss Thiel's health care liability claims against him because Dr. Spangler was not qualified to offer his opinions and because Dr.

3

Spangler's report fails to adequately set forth the statutory expert report elements of standard of care, breach, and causation.

## A. Standard of Review

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, pet. denied); *Maris v. Hendricks*, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id*. But a trial court has no discretion in determining what the law is or in applying the law to the facts, and thus "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

4

**B.     Statutory Standards for Expert Reports**

A trial court must grant a motion to dismiss a health care liability claim if it finds, after a hearing, that "the [expert] report [filed by the claimant] does not represent an objective good faith effort to comply with the definition of an expert report" in the statute.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*) (Vernon Supp. 2008).   While the expert report "need not marshal all the plaintiff's proof," *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (construing former art. 4590i, § 13.01), it must provide a fair summary of the expert's opinions as to the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).

To constitute a good faith effort, the report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875.  A report does not fulfill this requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Id.* at 879. But the information in the report "does not have to meet the same requirements

5

as the evidence offered in a summary-judgment proceeding or at trial." *Id.* The claimant's expert must incorporate enough information into the report to fulfill two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude the claims are meritorious. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*), (r)(6).

When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document. *Palacios*, 46 S.W.3d at 878. This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *See id*. However, section 74.351 does not prohibit *experts*, as opposed to courts, from making inferences based on medical history. *Marvin v. Fithian*, No. 14-07-00996-CV, 2008 WL 2579824, at *4 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.) (mem. op.); *see also* Tex. R. Evid. 703 (providing that an expert may draw inferences from the facts or data in a particular case); Tex. R. Evid. 705 (providing that expert may testify in terms of opinions and inferences).

## C.   Dr. Spangler is Qualified

Dr. Salas contends that Dr. Spangler was not qualified to provide opinions in this case because Dr. Salas is a general family practitioner while Dr. Spangler is a board-certified emergency room physician.

The determination of a doctor's qualifications to provide an expert report must be made on the basis of the contents of the report and his curriculum vitae. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). With respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert must (1) be practicing medicine at the time of the testimony or at the time the claim arose; (2) have knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the condition involved in the claim; and (3) be qualified on the basis of training or experience to offer an expert opinion regarding the standard of care. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(A), § 74.401(a) (Vernon 2005). A physician is "qualified on the basis of training or experience" if the physician is board-certified or has other substantial training or experience in an area of medical practice relevant to the claim and is actively practicing medicine in rendering medical care services relevant to the claim. *Id*. § 74.401(c).

7

An expert is qualified to give opinion testimony about the causal relationship between the injury claimed and the alleged departure from the applicable standard of care if he is "otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." *See id*. § 74.351(r)(5)(C), § 74.403(a) (Vernon 2005). The Texas Rules of Evidence provide that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702; *see also Roberts v. Williamson*, 111 S.W.3d 113, 121–22 (Tex. 2003) (recognizing that while medical license does not automatically qualify holder to testify as expert on every medical question, test is not whether expert practices in a particular field of medicine but rather whether offering party has established that expert has knowledge, skill, experience, training, or education regarding specific issue before court that would qualify expert to give opinion on particular subject, and holding that based on qualifications and experience, pediatrician was qualified to opine on cause and effect of neurological injuries).

We review a trial court's determination that an expert is qualified under an abuse of discretion standard. *Benish v. Grottie*, 281 S.W.3d 184, 198–99 (Tex. App.—Fort Worth 2009, pet. denied); *Mem'l Hermann Healthcare Sys. v.*

8

*Burrell*, 230 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.)

(citing *Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996)).

Concerning his qualifications, Dr. Spangler's report states, in part:

> I am an emergency medicine physician currently practicing in Katy, Texas at Christus St. Catherine's Hospital. I have been licensed to practice medicine in the State of Texas since 1992.[1] I am Board Certified by the American Board of Emergency Medicine and am an instructor in Advanced Cardiac Life Support and Advanced Trauma Life Support. My attached curriculum vitae is incorporated herein as part of my report.

> I am currently, and was at the time Dr. Salas treated Teagan Thiel, practicing medicine in an area relevant to this case. Throughout my career, I have worked as an emergency physician and have often been required to evaluate and diagnose a patient suffering from abdominal pain and acute appendicitis. I am well familiar with the standard of care required to diagnose appendicitis. By virtue of my education, training, experience and board certification in emergency medicine, I am familiar with and have knowledge of the accepted requisite standards of care for the diagnosis and treatment in question in this case. I am thus qualified to offer expert opinions in this matter regarding the care that Teagan Thiel received from Dr. Abel Salas and the Granbury Minor Emergency Clinic.

Concerning Dr. Salas's complaint that Dr. Spangler was not qualified to offer opinions in the case because he is an emergency room physician, not a general family practitioner like Dr. Salas, we note that Dr. Salas treated Thiel at a minor emergency clinic; Dr. Salas was not Thiel's family doctor, and she

---

[1] Dr. Spangler graduated from medical school in 1984 and held licenses in North Carolina and Louisiana before becoming licensed in Texas.

9

did not seek care from him in that capacity. Moreover, in setting the statutory qualifications for a chapter 74 expert, the statute does not focus on the defendant doctor's area of expertise but on the condition involved in the claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a)(2) (requiring expert to have "knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition *involved in the claim*," not knowledge of the defendant doctor's area of speciality) (emphasis added); § 74.401(c)(1), (2) (recognizing that experts may be qualified on the basis of training or experience if they are board certified or are actively practicing "in an area of medical practice *relevant to the claim*," not in the same field as the defendant doctor) (emphasis added). That is, the applicable "standard of care" and an expert's ability to opine on it are dictated by the medical condition involved in the claim and by the expert's familiarity and experience with it, not by the defendant doctor's area of expertise. *See, e.g.*, *McKowen v. Ragston*, 263 S.W.3d 157, 162 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (permitting infectious disease physician to opine on standard of care for treating infection stemming from arteriovenus access graft even though defendant doctor was cardiologist); *Blan v. Ali*, 7 S.W.3d 741, 746–47 & n.3 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that board-certified neurologist was not precluded from giving an opinion that two doctors—a

10

cardiologist and an emergency room physician—breached the standard of care in an area in which the neurologist has knowledge, skill, training, and experience and where the subject of the claim (strokes) fell squarely within his medical expertise). Thus, to the extent Dr. Salas complains in issue one that Dr. Spangler was not qualified because he is not a general family practice doctor, we overrule this portion of issue one.

Dr. Spangler's report establishes that he was qualified to opine on the applicable standard of care for the diagnosis, care, or treatment of the illness, injury, or condition (i.e., appendicitis) involved in Thiel's claim, as well as Dr. Salas's alleged breaches of that standard. Dr. Spangler is licensed to practice medicine in the State of Texas and was practicing medicine at the time Thiel's claim arose. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a)(1). Dr. Spangler possesses knowledge of accepted standards of medical care for the diagnosis, care, or treatment of appendicitis ("[t]hroughout my career, I have worked as an emergency physician and have often been required to evaluate and diagnose a patient suffering from abdominal pain and acute appendicitis. I am well familiar with the standard of care required to diagnose appendicitis"). *See id.* §§ 74.351(r)(5)(A), .401(a)(2)–(3); *Kelly v. Rendon*, 255 S.W.3d 665, 674 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (rejecting argument that experts were "not qualified to render opinions against [defendant doctor]

11

because their medical specialty is in a different medical discipline from his own" and holding that "the statute does not require a medical expert be practicing in the exact same field as the defendant physician, but instead must only be actively practicing medicine in rendering medical care services relevant to the claim"). Thus, Dr. Spangler meets the qualification requirements imposed by chapter 74 to offer opinions on the relevant standard of care and on Dr. Salas's breaches of that standard.

Dr. Spangler's report also establishes that he was qualified to opine on the issue of causation because he is qualified to render such an opinion under the Texas Rules of Evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(r)(5)(C), .403(a); Tex. R. Evid. 702. Dr. Spangler is board certified in emergency medicine and has practiced emergency medicine for over twenty years. These credentials and this experience, set forth within the four corners of Dr. Spangler's report and curriculum vitae, sufficiently establish that he is qualified to render an opinion on causation in this case. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(r)(5)(C), .403(a); Tex. R. Evid. 702; *see, e.g.*, *Mosely v. Mundine*, 249 S.W.3d 775, 779–80 (Tex. App.—Dallas 2008, no pet.) (concluding that expert had the knowledge, skill, experience, training, or education regarding specific emergency room physician's scope of practice and

12

holding that expert was therefore qualified to render an opinion on causation under section 74.351(r)(5)).

**D.    Dr. Spangler's Report Adequately Sets Forth the Standard of Care and the Alleged Standard of Care Violations by Dr. Salas**

Dr. Salas argues that Dr. Spangler's report fails to establish the standard of care for a family or general practitioner, such as Dr. Salas, or the commonality of standards between his own emergency medicine practice and the family or general medicine practice of Dr. Salas. To the extent that Dr. Salas argues that Dr. Spangler was not qualified to opine on the standard of care for the diagnosis and treatment of appendicitis, we have overruled that contention as set forth above.

Dr. Salas also argues that Dr. Spangler did not describe what a "thorough history and physical examination" required or how Dr. Salas failed to conduct them or identify what diagnostic testing should have been ordered.

Dr. Spangler's report contains the following:

<u>Standards of Care and Deviations from Standards of Care</u>

In reasonable medical probability, the standards of care applicable to evaluation and treatment of, and the injuries sustained by Teagan Thiel are as follows:

1.    The standard of care required Dr. Salas to conduct a thorough history and physical examination which would have lead him to consider further diagnostic evaluation to determine the cause of her abdominal complaints. Dr. Salas' differential diagnosis

13

should have included ectopic pregnancy, gastritis, appendicitis, urinary tract infection, pyelonephritis and gastroenteritis. Further testing and evaluation to determine the true cause of Teagan Thiel's abdominal complaints should be based upon a thorough and appropriate history and physical examination which should have included Teagan Thiel's vital signs. Had Dr. Salas conducted a thorough history and physical examination, as the standard of care required, his findings would have more than likely led him to perform additional testing to determine the true cause of her abdominal complaints.

2.      Without conducting an appropriate and thorough history and physical examination on August 28, 2006, Dr. Salas diagnosed Teagan Thiel as suffering from gastroenteritis, commonly a viral illness. Although acute gastroenteritis is most commonly caused by a virus, Dr. Salas prescribed an antibiotic, a medication used to treat bacterial illnesses which is ineffective on viral illnesses. Symptoms of gastroenteritis also include diarrhea, a symptom that Teagan Thiel did not have when she was seen by Dr. Salas on August 28, 2006. Dr. Salas failed to perform a thorough history and physical examination which would have lead him to consider further diagnostic evaluations to determine the cause of Teagan Thiel's abdominal complaints. Dr. Salas breached the standard of care and was negligent when he mis-diagnosed Teagan Thiel with gastroenteritis without considering and excluding other causes of Teagan Thiel's abdominal symptoms.

3.      On September 6, 2006, when Teagan Thiel again presented to Dr. Salas at the Granbury Minor Emergency Clinic, she was complaining of worsening symptoms of abdominal pain that were localizing to the right side of the abdomen. Abdominal pain in the right lower quadrant is a symptom commonly caused by appendicitis. At the time of this second visit, Teagan Thiel had been taking antibiotics prescribed by Dr. Salas on August 28, 2006, yet he diagnosed her with a urinary tract infection on September 6, 2006. The antibiotic therapy she had been taking should have increased his index of suspicion that the cause of her abdominal complaints was appendicitis rather than the urinary tract infection. Put simply, in light of her right sided abdominal

14

complaints, Dr. Salas should have considered the cause of Teagan Thiel's abdominal complaints as appendicitis until proven otherwise through an appropriate work-up. In order to make the proper diagnosis, the standard of care required Dr. Salas' work-up of Teagan Thiel's abdominal pain to include (1) obtaining her vital signs to determine if there was a fever which is frequently present with appendicitis; (2) obtaining a complete blood count (CBC) which is a blood test which would have revealed any elevation in her white blood cell count which is commonly found in patients with appendicitis; (3) obtaining a pregnancy test since Teagan Thiel was of child-bearing age and ectopic pregnancy may mimic the signs and symptoms of appendicitis; and (4) obtaining an abdominal and pelvic CT scan, a radiographic test conducted to visualize the appendix to determine if it is enlarged, distended or thickened, findings that indicate inflammation. Dr. Salas breached the standard of care by failing to obtain an adequate history, perform an appropriate physical examination and conduct the work-up necessary to diagnose the cause of Teagan Thiel's complaints. In reasonable medical probability, had Dr. Salas conducted the work-up described above, he would have diagnosed Teagan Thiel with appendicitis before her appendix ruptured spilling bacteria and causing the involvement of the colon that necessitated its removal on September 14, 2006. The CT would have in all likelihood revealed changes indicative of appendicitis that would have led to the correct diagnosis. This opinion is based on her symptoms, the CT findings on September 14, 2006 of appendicitis with extensive inflammatory changes and the September 14, 2006 operative findings of a ruptured, gangrenous appendix that had cause extensive disease to the adjacent colon.

4.    The standard of care further required Dr. Salas to refer Teagan Thiel to the hospital emergency department or a surgeon to treat her appendicitis on September 6, 2006. Having failed to conduct any meaningful work-up to determine the cause of Teagan Thiel's abdominal pain, Dr. Salas mis-diagnosed her appendicitis and failed to send Teagan Thiel to the hospital or a surgeon. In reasonable medical probability, Dr. Salas' failure to appropriately diagnose Teagan Thiel and refer her to healthcare providers who could treat her appendicitis resulted in a delayed diagnosis of her

15

appendicitis. During this delayed period the appendix ruptured, spilling bacteria into the peritoneal cavity. This bacteria formed an abscess and infected the colon and resulted, in reasonable medical probability, in the gangrenous colon found during the September 14, 2006 operation that necessitated the hemicolectomy.

To summarize, Dr. Spangler set forth at least two specific standard of care violations by Dr. Salas: (1) he failed to conduct an appropriate and thorough history and physical examination of Teagan Thiel on both August 28 and September 6 and failed to perform diagnostic testing on both dates, and (2) he failed to refer Teagan Thiel to the hospital emergency department or to a surgeon to treat her appendicitis. After setting forth these standard of care violations, Dr. Spangler's report sets forth the conduct that the standard of care required in the taking of a medical history and physical examination: (1) obtaining Thiel's vital signs to determine if Thiel had a fever, which is frequently present with appendicitis; (2) obtaining a complete blood count (CBC), which is a blood test that would have revealed any elevation in her white blood cell count that is commonly found in patients with appendicitis; (3) obtaining a pregnancy test since Thiel was of child-bearing age and an ectopic pregnancy may mimic the signs and symptoms of appendicitis; and (4) obtaining an abdominal and pelvic CT scan, a radiographic test conducted to visualize the appendix to determine if it is enlarged, distended, or thickened, which are findings that indicate inflammation. The report then sets forth the treatment

16

that should have been given to meet the standard of care—including referring Thiel to a hospital or to a surgeon—and opines that Dr. Salas breached the standard of care and was negligent when he misdiagnosed Thiel with gastroenteritis and with a urinary tract infection without considering and excluding other causes of Thiel's abdominal symptoms.

Thus, contrary to Dr. Salas's argument, Dr. Spangler's report does specifically describe what a "thorough history and physical examination" required, does specifically describe how Dr. Salas failed to conduct a thorough history and examination, and does specifically identify what diagnostic testing should have been ordered. For the purposes of a statutory expert report, statements concerning the standard of care and breach need only identify what care was expected and was not given with such specificity that inferences need not be indulged to discern them. *See Palacios*, 46 S.W.3d at 880; *Benish*, 281 S.W.3d at 198; *Thomas v. Alford*, 230 S.W.3d 853, 858 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Because Dr. Spangler's report meets this requirement, we hold that the trial court did not abuse its discretion by determining that Dr. Spangler's report was adequate in this regard. We overrule this portion of Dr. Salas's first issue.

17

**E.    Dr. Spangler's Report Adequately Sets Forth Causation: The Alleged Standard of Care Violations by Dr. Salas Proximately Caused Thiel's Hemicolectomy**

Dr. Salas next argues that Dr. Spangler's report fails to adequately address the causation element of Thiel's health care liability claim. Dr. Salas contends that Dr. Spangler's causation opinion is inadequate because he failed to "provid[e] a time frame within which one would reasonably expect an inflamed appendix to become gangrenous" and "utterly failed to establish when Thiel actually started suffering from appendicitis, as well as when her appendix ruptured." Dr. Salas argues that Dr. Spangler's causation opinion stacks "speculation upon speculation and inference upon inference" concerning when Thiel began suffering from appendicitis.

To establish causation, an expert report must provide information linking the defendant's purported breach of the standard of care to the plaintiff's injury. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *see also Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 390 n.32 (Tex. 2008) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based"). An expert must also explain the basis of his statements to link his conclusions to the facts. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. To constitute a good faith effort to establish the causal relationship element, the expert report need not

18

marshal all of the plaintiff's proof or present evidence as if the plaintiff was actually litigating the merits. *See id.* at 52–53; *Palacios*, 46 S.W.3d at 878. No magic words such as "reasonable medical probability" are required for compliance. *Bowie Mem'l Hosp.*, 79 S.W.3d at 53. The report, however, must provide enough information within the document to both inform the defendant of the specific conduct at issue and to allow the trial court to conclude that the suit has merit. *Id*. at 52.

A review of Dr. Spangler's report refutes each of Dr. Salas's claims concerning its causation sufficiency. Dr. Spangler's report explains,

> Appendicitis should be diagnosed as early as possible to achieve the best outcome for the patient. If a patient is diagnosed before the appendix perforates, the appendix is typically removed via a laparoscopic surgical procedure which allows for more rapid healing and minimal scarring. In contrast, if the diagnosis is delayed in a patient until after the appendix ruptures, a patient may develop complications such as abscess, infection of other organs or infection of the peritoneal cavity that requires more extensive and difficult surgery. After rupture of the appendix, the longer the diagnosis is delayed, the more extensive the spread of infection in the abdomen becomes and greater damage to abdominal structures occurs.

> In this case, the diagnosis of Teagan Thiel's appendicitis was delayed due to Dr. Salas' failure to obtain the appropriate clinical history or complete an adequate physical examination and perform the appropriate diagnostic testing to determine the cause of her abdominal complaints. Because of this delay, her appendicitis progressed until the appendix became gangrenous and ruptured thereby spilling bacteria into her peritoneal cavity. As a result of the perforation, Teagan Thiel's colon became infected and

19

gangrenous which required that a portion of this twenty-two year old's colon needed to be surgically removed (hemicolectomy).

It is my opinion, based on reasonable medical probability, as explained in detail above, that Dr. Salas failed to timely diagnose Teagan Thiel's appendicitis. It is further my opinion, based on reasonable medical probability, that this caused Teagan Thiel's diagnosis of appendicitis to be delayed. Due to this delay, Teagan Thiel's appendix ruptured and her colon became gangrenous. Her increasing symptomatology is consistent with appendicitis at different stages and supports the conclusion that the delay in the diagnosis caused, in reasonable medical probability, the appendix to rupture. Initially, appendicitis typically presents with abdominal pain located around the umbilical area. As the appendix becomes more distended, the overlying parietal peritoneum becomes irritated causing the pain to migrate and become localized to the right lower quadrant. When Teagan Thiel initially presented to the Granbury Minor Emergency Clinic and was seen by Dr. Salas on August 28, 2006, she was not yet complaining of pain that was localized to the right lower quadrant. This is indicative of an early appendicitis. The second time Teagan Thiel was seen by Dr. Salas on September 6, 2006, the pain was localizing to the right side which is indicative of an acute appendicitis with irritated parietal peritoneum most commonly associated with increased swelling of the appendix without perforation.

Thus, if Dr. Salas had acted within the standard of care and timely diagnosed Teagan Thiel, her appendix would not have ruptured, her colon would not have become gangrenous and she would not have had to endure the extensive surgery she underwent on September 14, 2006 that included removal of part of her colon.

Without restating every sentence in the causation portion of Dr. Spangler's report set forth above, a review of the above paragraphs demonstrates information sufficient enough to inform Dr. Salas of the specific conduct that Thiel has called into question and how that conduct purportedly

20

injured Thiel, providing a basis for the trial court to conclude that Thiel's claims against Dr. Salas have merit. *See, e.g., id.* (setting forth when a report is sufficient on causation). Dr. Spangler links Dr. Salas's breaches of the standard of care ("having failed to conduct any meaningful work-up to determine the cause of Teagan Thiel's abdominal pain, Dr. Salas mis-diagnosed her appendicitis and failed to send Teagan Thiel to the hospital or a surgeon") to Thiel's injury ("[i]n reasonable medical probability, Dr. Salas' failure to appropriately diagnose Teagan Thiel and refer her to healthcare providers who could treat her appendicitis resulted in a delayed diagnosis of her appendicitis. During this delayed period the appendix ruptured, spilling bacteria into the peritoneal cavity. This bacteria formed an abscess and infected the colon and resulted, in reasonable medical probability, in the gangrenous colon found during the September 14, 2006 operation that necessitated the hemicolectomy").

Concerning Dr. Salas's argument that Dr. Spangler failed to "provid[e] a time frame within which one would reasonably expect an inflamed appendix to become gangrenous" or "utterly failed to establish when Thiel actually started suffering from appendicitis, as well as when her appendix ruptured," Dr. Salas points us to no case law or statutory provisions that would require Dr. Spangler to opine in a chapter 74 expert report when Thiel started suffering from

21

appendicitis or when her appendix ruptured. Nonetheless, Dr. Spangler's report specifically explains how appendicitis progresses and states that when Dr. Salas initially saw Thiel, her symptoms (general abdominal pain) were consistent with early appendicitis; that when he saw her approximately nine days later, her symptoms (abdominal pain localizing to the right side) were consistent with acute appendicitis; and that if Dr. Salas had acted within the standard of care and timely diagnosed Thiel, her appendix would not have ruptured, and she would not have had to endure the extensive surgery she underwent on September 14, 2006 that included removal of part of her colon. It is enough that Dr. Spangler opined that Dr. Salas's breaches of the standard of care delayed the diagnosis of Thiel's appendicitis so that Thiel's appendix ruptured after Dr. Salas's September 6, 2006 examination and caused Thiel's colon to become gangrenous. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *see also, e.g., Simonson v. Keppard*, 225 S.W.3d 868, 875–76 (Tex. App.—Dallas 2007, no pet.) (causation opinion that failure to timely diagnose cerebellar infarction or hemorrhage via a CT scan or neurological consult proximately caused patient's death was adequate).

Dr. Salas also claims that Dr. Spangler's causation opinions are conclusory. But, as set forth above, Dr. Spangler's causation opinions specifically and extensively set forth all of the facts on which they are

22

based—that is, Thiel's symptoms on August 28, her continuing and worsening symptoms on September 6, and her ultimate ruptured appendix and gangrenous colon. Thus, Dr. Spangler's causation opinions are not conclusory. *See, e.g., Arkoma Basin Exploration Co.*, 294 S.W.3d at 390 n.32; *Mosely*, 249 S.W.3d at 780–81 (holding expert's causation opinion was not mere conjecture because it was supported with facts); *Simonson*, 225 S.W.3d at 876 (same).

For the same reasons that Dr. Spangler's causation opinions are not conclusory, they also do not stack inference upon inference as alleged by Dr. Salas. An inference is a deduction of fact that may be drawn from another fact. *See* Black's Law Dictionary 700 (5th ed. 1979). Direct evidence, on the other hand, is "evidence which, if believed, proves the fact without inference or presumption." *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). Dr. Spangler's causation opinions constitute direct evidence that Dr. Salas's breaches of the standard of care caused Thiel's injuries. Dr. Spangler expressly explained that

> based on reasonable medical probability, as explained in detail above, . . . Dr. Salas failed to timely diagnose Teagan Thiel's appendicitis. It is further my opinion, based on reasonable medical probability, that this caused Teagan Thiel's diagnosis of appendicitis to be delayed. Due to this delay, Teagan Thiel's appendix ruptured and her colon became gangrenous.

23

No inference is required. Dr. Spangler expressly states that Dr. Salas's breaches of the standard of care caused Thiel's injuries. Likewise, Dr. Spangler expressly opines that Thiel was suffering from appendicitis when she initially presented to Dr. Salas on August 28 ("early appendicitis"); that when Thiel presented to Dr. Salas on September 6, she was suffering from acute appendicitis but her appendix had not yet ruptured ("pain was localizing to the right side which is indicative of an acute appendicitis . . . with increased swelling of the appendix *without perforation*") (emphasis added); and that, as a result of Dr. Salas's failure to timely diagnose Thiel's appendicitis, her appendix subsequently ruptured ("if Dr. Salas had acted within the standard of care and timely diagnosed Teagan Thiel, her appendix would not have ruptured"). No inferences are required to support Dr. Spangler's causation opinions.

Viewing the information set forth within the four corners of Dr. Spangler's report, we hold that the trial court did not abuse its discretion by determining that Dr. Spangler's report provides a fair summary of his expert opinions as to the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *see Palacios*, 46 S.W.3d at

24

878; *Walters v. Hudoba*, No. 02-08-00196-CV, 2009 WL 161079, at *6 (Tex. App.—Fort Worth Jan. 22, 2009, no pet.) (mem. op.). Thus, the trial court did not abuse its discretion by determining that Dr. Spangler's report constitutes an objective good faith effort to satisfy the two purposes of section 74.351. *See Palacios*, 46 S.W.3d at 879; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*), (r)(6); *CHCA Mainland, L.P. v. Wheeler*, No. 09-07-00634-CV, 2008 WL 960798, at *5 (Tex. App.—Beaumont Apr. 10, 2008, no pet.) (mem. op.) (holding that doctor's expert report represented a good faith effort to comply with the definition of an expert report when it expressed opinion that if not for medical center's breach of the standard of care, with the symptoms the patient presented at the emergency room, the patient would have been seen and evaluated by qualified medical personnel and "would have been spared the generalized intraperitoneal sepsis that necessitated more extensive surgery and an extended hospitalization"). Accordingly, we overrule the remainder of Appellants' first issue.

## IV. TRIAL COURT FAILED TO AWARD ATTORNEY'S FEES TO CLINIC

In Appellants' second issue, the Clinic argues that the trial court abused its discretion when it refused to award the Clinic attorney's fees after dismissing, with prejudice, the health care liability claims Thiel alleged against the Clinic. In the Clinic's motion to dismiss, it objected to Dr. Spangler's

25

qualifications and the substance of his opinions, moved for dismissal with prejudice of the claims Thiel brought against the Clinic, and requested attorney's fees. The trial court thereafter signed an order sustaining the Clinic's objections, granting the Clinic's motion to dismiss with prejudice all health care liability claims alleged by Thiel against the Clinic, and awarding the Clinic "$0" in attorney's fees. Thiel did not perfect an appeal challenging the trial court's dismissal with prejudice of her health care liability claims against the Clinic; thus, the propriety of the trial court's order dismissing with prejudice Thiel's claims against the Clinic is not before us.[2] *See* Tex. R. App. P. 25.1(c) (requiring any party who seeks to alter the trial court's judgment or other appealable order to file a notice of appeal).

When a health care liability claim is dismissed with prejudice pursuant to Texas Civil Practice and Remedies Code section 74.351(b), the trial court is required to award attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (providing that trial court shall award reasonable attorney's fees). Statutes providing that a party "shall" be awarded attorney's fees are not discretionary. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *Abilene Diagnostic Clinic v. Downing*, 233 S.W.3d 532, 535 (Tex. App.—Eastland

---

[2] Likewise, in her appellate brief, Thiel prays that this court "will affirm the judgment of the trial court."

26

2007, pet. denied).  We therefore hold that the trial court abused its discretion by awarding no attorney's fees.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b); *accord Davis v. Webb*, 246 S.W.3d 768, 774 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

We sustain Appellants' second issue.

### V.  CONCLUSION

Having overruled Appellants' first issue, we affirm the portion of the trial court's November 17, 2008 order denying Dr. Salas's motion to dismiss. Because Thiel does not challenge the portion of the order granting the Clinic's motion to dismiss, we affirm that portion of the order.  Having sustained Appellants' second issue, we reverse the portion of the trial court's order awarding no attorney's fees to the Clinic and remand the issue of attorney's fees to the trial court.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DELIVERED:  August 27, 2009

27