

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-417-CV

TEXAS BACK INSTITUTE, P.A.                                      APPELLANTS
D/B/A TEXAS BACK INSTITUTE
AND WILLIAM D. BRADLEY, M.D.

V.

BRENDA PETERS                                                     APPELLEE

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellants Texas Back Institute, P.A. d/b/a Texas Back Institute and

William D. Bradley, M.D. appeal the trial court's orders denying their objections

to Appellee Brenda Peters's tendered expert report and denying their motion to

---

[1] *See* Tex. R. App. P. 47.4.

dismiss Peters's health care liability claims.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2008), § 74.351(a), (b) (Vernon Supp. 2009). In a single issue, divided into two subissues, Appellants argue that Carl M. Berkowitz, M.D., the physician who authored Peters's expert report, is not qualified to render an expert opinion regarding the accepted standards of care applicable to this case and that the common law doctrine of res ipsa loquitur does not provide an exception to the requirement that Peters serve a section 74.351(a) expert report.  We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

According to Peters's original petition, on July 30, 2007, Dr. Bradley performed a "microdiske[c]tomy at L5-S1 level with a hemilaminectomy."  At the conclusion of the procedure, Dr. Bradley confirmed that all sponge, needle, and instrument counts were correct.  Peters thereafter developed "severe complications" at the surgical site, including swelling, redness, purulent pus, high fever, and aches and pains.  On or about August 27, 2007, Peters underwent an incision and drainage procedure at the surgical site during which a medical sponge left from the microdiskectomy was discovered.  Peters consequently underwent additional medical procedures, rehabilitation, and physical therapy.

Peters filed her original petition on May 23, 2008, alleging that she had suffered injuries and damages proximately caused by Appellants' negligence in failing to properly perform the appropriate and correct examinations, treatment, and procedures associated with the microdiskectomy; that Appellants committed gross negligence; and that res ipsa loquitur applies to her cause of action. Peters also alleged that Texas Back Institute is vicariously liable for Dr. Bradley's actions under the doctrine of respondeat superior. Pursuant to civil practice and remedies code section 74.351(a), Peters timely served Appellants with Dr. Berkowitz's expert report and curriculum vitae. *Id.* § 74.351(a).

Appellants filed objections to Dr. Berkowitz's report challenging (1) his qualifications to opine on the standards of care applicable to this case and (2) any contention by Peters that no expert report is required to be served because the doctrine of res ipsa loquitur applies to the case. Before the expiration of 120 days from the date Peters filed her original petition, she served Appellants with an addendum to Dr. Berkowitz's report. Appellants thereafter filed their first supplemental objections to Dr. Berkowitz's report and addendum and their motion to dismiss Peters's claims, again challenging Dr. Berkowitz's qualifications and arguing that res ipsa loquitur is not an exception to section 74.351(a)'s service requirement. The trial court overruled

3

Appellants' objections to Dr. Berkowitz's report and denied their motion to dismiss. This interlocutory appeal followed.

### III. Dr. Berkowitz's Qualifications

In the first part of their only issue, Appellants argue that the trial court abused its discretion by denying their motion to dismiss because Dr. Berkowitz's report "does not demonstrate, or even claim, that he is qualified to opine as to the standard of care applicable to an orthopedic surgeon in the performance of postoperative procedures to prevent the retention of a sponge following spinal surgery."

#### A.    Standard of Review

We review a trial court's order on a motion to dismiss a health care liability claim for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or if it acts without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986)). We may not substitute our judgment for the trial court's judgment. *Id.* Nor can we determine that the trial court abused its discretion merely because we would have decided the matter differently. *Downer*, 701 S.W.2d at 242.

4

B.    Expert Report Requirements

Civil practice and remedies code section 74.351 provides that, within 120 days of filing suit, a plaintiff must serve expert reports for each physician or health care provider against whom a liability claim is asserted. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). An expert report is a written report by an expert that provides a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the care rendered by the physician or health care provider failed to meet the standard, and the causal relationship between that failure and the injury, harm, or damages claimed. *Id.* § 74.351(r)(6). If a claimant timely furnishes an expert report, a defendant may file a motion challenging the report's adequacy. *See id.* § 74.351(a), (c), (*l*). A trial court must grant a motion to dismiss based on the alleged inadequacy of an expert report only if it finds, after a hearing, "that the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute. *Id.* § 74.351(*l*).

The information in the report does not have to meet the same requirements as evidence offered in a summary judgment proceeding or at trial, and the report need not marshal all the plaintiff's proof, but it must include the expert's opinions on each of the elements identified in the statute—standard of care, breach, and causation. *Am. Transitional Care Ctrs. of Tex., Inc. v.*

*Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001); *Thomas v. Alford*, 230 S.W.3d 853, 856 (Tex. App.—Houston [14th Dist.] 2007, no pet.). To qualify as a good faith effort, an expert report must (1) inform the defendant of the specific conduct the plaintiff has called into question and (2) provide a basis for the trial court to conclude that the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 879; *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A report does not fulfill these two purposes if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Palacios*, 46 S.W.3d at 879. In assessing the report's sufficiency, the trial court may not draw any inferences; it must rely exclusively on the information contained within the report's four corners. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878.

Under section 74.401, a person may qualify as an expert witness on the issue of whether a physician departed from accepted standards of medical care only if the person is a physician who

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

6

Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a) (Vernon 2005). In determining whether a witness is qualified on the basis of training or experience under section 74.401(a)(3), the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim and (2) is actively practicing medicine in rendering medical care services relevant to the claim. *Id.* § 74.401(c).

In delineating the statutory qualifications for a chapter 74 expert, the relevant provisions focus on the defendant physician's area of expertise and on the condition involved in the claim. *See id.* § 74.401(a)(2) (requiring expert to have "knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or *condition involved in the claim*" (emphasis added)), § 74.401(c)(1), (2) (recognizing an expert may be qualified on the basis of training or experience if he or she is board certified or is practicing "in an area of medical practice *relevant to the claim*" (emphasis added)). The applicable standard of care and an expert's ability to opine on it are thus dictated by the medical condition involved in the claim and by the expert's familiarity and experience with that condition. *See Granbury Minor Emergency Clinic v. Thiel*, 296 S.W.3d 261, 267 (Tex. App.—Fort Worth 2009, no pet.); *McKowen v. Ragston*, 263 S.W.3d 157, 162–63 (Tex. App.—Houston [1st

7

Dist.] 2007, no pet.) (permitting infectious diseases physician to opine on standard of care for treating infection stemming from AV graft even though defendant doctor was cardiothoracic surgeon); *Blan v. Ali*, 7 S.W.3d 741, 746–47 & n.3 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

An expert report concerning standards of care for physicians authored by a person who is not qualified to testify cannot constitute an adequate report. *Moore v. Gatica*, 269 S.W.3d 134, 140 (Tex. App.—Fort Worth 2008, pet. denied). "[T]here is no validity . . . to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question." *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996). However, "there are certain standards of medical care that apply to multiple schools of practice and any medical doctor." *Blan*, 7 S.W.3d at 746. A physician "who is not of the same school of medicine [as the defendant] . . . is competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant." *Ehrlich v. Miles*, 144 S.W.3d 620, 625 (Tex. App.—Fort Worth 2004, pet. denied). The report must generally demonstrate that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject. *Id.* (citing *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003)). Our

analysis of Dr. Berkowitz's qualifications is limited to the four corners of the report and curriculum vitae. *See Polone v. Shearer*, 287 S.W.3d 229, 238 (Tex. App.—Fort Worth 2009, no pet.).

> C.   Dr. Berkowitz Is Statutorily Qualified to Opine about the Accepted Standards of Care

Dr. Berkowitz's report states in relevant part as follows:

I am Board Certified in Internal Medicine and Infectious Diseases. I am currently licensed in the State of Texas and am engaged in the full time practice of Infectious Diseases. Details of my education, training and experience are included in the accompanying *curriculum vitae*, which is incorporated herein. . . .

. . . I am aware of the definitions of negligence, standard of care, and proximate cause applicable to Denton County, Denton, Texas, and have relied upon them in the formation of the following opinions. Further, *the care of a patient with a retained foreign body is within the field of expertise of any Infectious Diseases specialist. I have over twenty years of experience in Internal Medicine and Infectious Diseases, personal knowledge and education, training and experience caring for this type of patient.* [Emphasis added.]

The addendum to Dr. Berkowitz's report states in relevant part as follows:

This addendum will specifically address the issue of responsibility for retained foreign bodies, and my familiarity with the standards applicable to this issue.

*In my years of experience working with surgeons in hospitals, as well as my experience on Quality Assurance Committees, it is well known that the responsibility for assuring that no foreign body is left in a patient is at least shared by the operating surgeon.* This is even more the case when the surgeon specifically states that the sponge count is correct.

9

> *It is known to me through my years of experience working with surgeons, as well as my work on Quality Improvement committees, that the use of radiopaque materials is recommended in the operating room, and that the appropriate utilization of radiologic studies is indicated to prevent leaving foreign bodies in the postoperative patient.*
>
> *This knowledge is neither limited to, nor specific to surgeons or those who work in the operating room.*  [Emphasis added.]

According to his curriculum vitae, Dr. Berkowitz became licensed to practice medicine in Texas in 1986; he is certified by the American Board of Internal Medicine and the Subspecialty Board of Infectious Diseases; he has had an active hospital staff appointment with the Methodist Hospital System, Baptist Hospital System, and Christus Santa Rosa Hospital since 1988; he has had an active hospital staff appointment with the Methodist Ambulatory Surgical Hospital since 1993; he served as Chief of Staff for the Southwest Texas Medical Hospital from 2002–2003; he has been a Partner with San Antonio Infectious Diseases Consultants since 1993; and he has served as Medical Director for the San Antonio Infectious Diseases Consultants Infusion Center since 1997.

Appellants' chief complaint regarding Dr. Berkowitz's qualifications to opine about the applicable standard of care is that his report fails to demonstrate that he has sufficient training or experience in performing surgical or post-operative procedures to prevent the retention of a sponge following

10

spinal surgery or any surgery. In other words, they contend that the information contained in his report and curriculum vitae only qualifies him to opine about the standard of care for a patient *once a retained foreign body has been found* as opposed to procedures *to prevent the retention* of a sponge. To the extent there is any relevant distinction, Dr. Berkowitz does not limit his qualifications to opine about the standard of care for a patient once a retained foreign body has been found. He states in his report that in his years of experience working with surgeons in hospitals and on quality assurance committees, it is well known that the responsibility for assuring that no foreign body *is left in a patient* is shared by the operating surgeon. Dr. Berkowitz also states that in his years of experience working with surgeons and working on quality improvement committees, the use of radiopaque materials is recommended *in the operating room* and that the appropriate *utilization* of radiologic studies is indicated *to prevent leaving foreign bodies in the postoperative patient*. Thus, contrary to Appellants' argument, Dr. Berkowitz's report contains information expressly relevant to his qualifications to opine about the standards of care applicable to procedures *to prevent* the retention of a medical sponge following surgery.[2]

---

[2] The cases relied on by Appellants are therefore inapposite. *See Reardon v. Nelson*, No. 14-07-00263-CV, 2008 WL 4390689, at *3–4 (Tex.

11

Dr. Berkowitz's report and curriculum vitae show that he is familiar and has experience with the condition involved in the claim. *See Thiel*, 296 S.W.3d at 267; *McKowen*, 263 S.W.3d at 162. Peters did not sue Dr. Bradley and Texas Back Institute for injuries and damages that she incurred as a result of Dr. Bradley's and Texas Back Institute's alleged negligence in regard to the "means, methods, or manner" in which Dr. Bradley performed the microdiskectomy at L5-S1 level with a hemilaminectomy. Rather, Peters sued Dr. Bradley and Texas Back Institute for injuries and damages that she incurred as a result of Dr. Bradley's and Texas Back Institute's alleged negligence in leaving a medical sponge in her body after performing the surgery.[3] The medical condition involved in the claim thus concerns a physician or health care provider's failure to recover a foreign body from a patient after surgery. To qualify as an expert under section 74.401, Dr. Berkowitz has to demonstrate

---

App.—Houston [14th Dist.] Sept. 30, 2008, no pet.) (mem. op.); *Methodist Health Care Sys. of San Antonio, Ltd. v. Rangel*, No. 04-05-00500-CV, 2005 WL 3445994, at *2–3 (Tex. App.—San Antonio Dec. 14, 2005, pet. denied) (mem. op.).

[3] Peters alleged in her original petition that a foreign body was discovered during the emergency surgery that she underwent on or about August 27, 2007, and that the foreign body was determined to be a medical sponge that "had not been properly recovered at the close of the previous procedure."

that he has knowledge, skill, experience, training, or education regarding this medical condition. *See Ehrlich*, 144 S.W.3d at 625.

According to his report and curriculum vitae, Dr. Berkowitz has over twenty years' experience in internal medicine and infectious diseases, which includes multiple active hospital staff appointments and serving as Chief of Staff for the Southwest Texas Medical Hospital; he is engaged in the full-time practice of infectious diseases; he has personal knowledge, education, training, and experience caring for patients like Peters; and, significantly, he expressly opines that the standards of care for a patient with a retained foreign body—which includes procedures to prevent the retention of a medical sponge following surgery—is within the field of expertise of any infectious diseases specialist. This information, together with the portions of his report opining about the standards of care applicable to procedures to prevent the retention of a medical sponge following surgery, demonstrates that Dr. Berkowitz has knowledge, skill, experience, training, or education regarding the condition involved in the claim; he "has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting [Appellants]." *See id.*

Appellants do not challenge the adequacy of Dr. Berkowitz's report as it pertains to his opinions about the applicable standard of care, breach of the

13

standard of care, and causation.[4] Dr. Berkowitz's report and curriculum vitae demonstrate his qualifications as an expert witness under section 74.401 to opine on the issue of whether Appellants departed from the accepted standards of care applicable to this case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a)(1)–(3). Accordingly, in light of the information contained in Dr. Berkowitz's report and curriculum vitae, we hold that the trial court did not abuse its discretion by denying Appellants' objections to Dr. Berkowitz's expert report and Appellants' motion to dismiss Peters's health care liability claims. *See Wright*, 79 S.W.3d at 52. We overrule this part of Appellants' issue.

Because we overrule the part of Appellants' issue pertaining to Dr. Berkowitz's qualifications, we need not additionally address the portion of their first issue arguing that res ipsa loquitur is not an exception to the requirement that Peters serve an expert report. *See* Tex. R. App. P. 47.1.

---

[4] ... Dr. Berkowitz identifies that the applicable standards of care required Dr. Bradley to perform a sponge and needle count, to perform an x-ray after completing the procedure if radiopaque sponges were used, and to make appropriate records. He opines that Dr. Bradley breached the applicable standards of care by leaving a sponge in Peters, by failing to perform a proper sponge count, and by failing to order an x-ray to determine whether any sponges had been left inside Peters. Dr. Berkowitz opined that the retained sponge caused an infection to develop in Peters and that the infection would not have developed had the sponge not been left inside Peters.

14

IV. CONCLUSION

Having overruled the first part of Appellants' issue, and having determined that we need not reach the remaining part of their only issue, we affirm the trial court's orders denying Appellants' objections to Dr. Berkowitz's report and denying Appellants' motion to dismiss Peters's health care liability claims.


                                        BILL MEIER
                                        JUSTICE

PANEL: MCCOY and MEIER, JJ.

DELIVERED: December 23, 2009