

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-455-CV

CONCENTRA HEALTH SERVICES, INC., GORDON MCWATT, D.O., NORMAN MCCALL, M.D., ANGELA DEFORREST, P.A., AND ANGELA DEFORREST, P.A., INDIVIDUALLY

APPELLANTS

V.

AMANDA G. EVERLY, A/K/A AMANDA G. EVERLY WAGENKNECHT

APPELLEE

------------

## FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In this interlocutory appeal, Appellants Concentra Health Services, Inc.

(Concentra), Gordon McWatt, D.O., Norman McCall, M.D., Angela DeForrest,

---

[1] *See* Tex. R. App. P. 47.4.

P.A., and Angela DeForrest, P.A., Individually, appeal the trial court's denial of their motion to dismiss the health care liability claims of Appellee Amanda G. Everly, a/k/a Amanda G. Everly Wagenknecht (Everly) for failure to comply with section 74.351 of the Texas Civil Practice & Remedies Code.[2] Appellants also appeal the trial court's denial of their request for attorney's fees as a sanction for Everly's failure to tender an adequate expert report. Because we hold that the expert report provided by Everly was adequate for some of Everly's claims but not for others, we affirm in part, reverse in part, render in part, and remand in part.

### Background Facts

Everly injured her left hip at work on January 22, 2006, while moving a twenty-pound box from above her head. The next day, Everly went to Concentra complaining of pain in her hip and a cold, tingling sensation in her left leg and foot. DeForrest, a physician assistant at Concentra, examined Everly and confirmed that her left leg and foot were cool to the touch. Hip and pelvis x-rays were ordered, and Everly was assessed as having a hip strain and hip and pelvic pain. Everly was given pain medication and a walking cane.

---

[2] Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2009).

DeForrest discussed the diagnosis and treatment plan with Everly and told Everly to return to Concentra on January 26, 2006, or earlier if needed.

Everly returned to Concentra on January 26 and was again seen by DeForrest, who Everly alleges was under the supervision of Dr. McWatt, a family practice and occupational health physician at Concentra. Everly's pleadings and the expert report at issue do not address Everly's complaints, symptoms, diagnosis, care, or treatment at this visit. Everly returned to Concentra for another follow-up visit the next day, and her left hip was examined by Dr. McCall, a Concentra occupational health physician. Everly stated that her left hip was not better and that her left leg was cold and numb. Dr. McCall assessed Everly as having a left hip strain, prescribed a nonsteroidal anti-inflammatory drug, and ordered an MRI. Dr. McCall instructed Everly to return twenty-four hours after her MRI, but Everly never returned to Concentra. Some time afterward, Everly developed a permanent foot drop.

**Procedural History**

On January 23, 2008, Everly filed this suit asserting health care liability claims against Concentra, Dr. McWatt, Dr. McCall, and DeForrest arising from the treatment she received in January 2006. Everly alleged that each defendant had committed "one or more" of the following acts of negligence:

- failing to properly examine and diagnose Everly's condition;

- failing to timely or properly or adequately govern and/or supervise the quality of medical care and surgical care and treatment of Everly; and

- failing to timely or properly or adequately provide such quality of medical care and treatment necessary to prevent Everly's injuries.

Everly also claimed that Concentra was vicariously liable for its employees' negligence. Everly sought damages from each defendant for pain and suffering, medical expenses, disfigurement, physical impairment, mental anguish, lost earnings, and the loss of earning capacity.

On May 21, 2008, Everly filed the expert report and curriculum vitae of Joseph H. Gaines, M.D., an orthopedic surgeon, stating that Appellants failed to diagnose and treat Everly for reflex sympathetic dystrophy (RSD) and that their negligence caused her to experience permanent foot drop. Appellants jointly objected to the sufficiency of the report and moved to dismiss under Texas Civil Practice and Remedies Code section 74.351.[3] The trial court sustained Appellants' objections and granted Everly thirty days to cure the deficiencies and serve a sufficient expert report.[4]

---

[3] *See id*.

[4] *See id.* § 74.351(c) ("If an expert report has not been served . . . because elements of the report are found deficient, the court may grant one 30-day extension . . . .").

4

Everly served a supplemental report on September 2, 2008.  Appellants again jointly objected to the report as supplemented and moved to dismiss under section 74.531, attacking Dr. Gaines's qualifications, contending that his report failed to adequately set forth his opinions regarding the applicable standard of care, breach, and causation, and seeking attorney's fees and costs.  The trial court denied Appellants' motion by order dated November 13, 2008.  This interlocutory appeal followed.

**Issues**

In their first issue, Appellants bring three separate grounds in support of their contention that the trial court erred by denying their motion to dismiss Everly's claims.  First, Appellants argue that Dr. Gaines's report and curriculum vitae fail to establish that Dr. Gaines, an orthopedic surgeon, is qualified to offer standard of care opinions for each Appellant because he has not demonstrated training or experience in each Appellant's field of medicine.  Second, Appellants assert that the report fails to articulate a separate, applicable standard of care for each Appellant or how each Appellant breached the standard of care.  Third, Appellants contend that the report fails to adequately explain Dr. Gaines's opinions regarding a causal connection between each Appellant's conduct and Everly's claimed injuries.  In their second issue, Appellants argue that the trial

5

court erred by denying their request for attorney's fees and costs based on Everly's failure to tender an adequate expert report.[5]

**Expert Reports in Health Care Liability Claims**

Texas Civil Practice and Remedies Code section 74.351 requires a health care liability claimant to timely serve an expert report that provides a fair summary of a qualified expert's opinions as to the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.[6]  A defendant may challenge the adequacy of a report, and the trial court must grant a motion to dismiss the plaintiff's claims if it finds, after a hearing, that "the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute.[7]

To constitute an "objective good faith effort" to meet the statutory definition, an expert report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to

---

[5] *See id.* § 74.351(b)(1).

[6] *Id.* § 74.351(r)(6).

[7] *Id*. § 74.351(*l*).

conclude that the claims have merit."[8] A report does not fulfill this requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements.[9]  However, the report "need not marshal all the plaintiff's proof"[10] and "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial."[11]

When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document.[12]  This requirement prevents a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended.[13] Section 74.351 does not, however, prohibit experts, as opposed to courts,

---

[8] *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001) (construing former Tex. Rev. Civ. Stat. art 4590i, § 13.01); *see also Moore v. Gatica*, 269 S.W.3d 134, 139–40 (Tex. App.—Fort Worth 2008, pet. denied) (applying *Palacios* to construction of section 74.351).

[9] *Palacios*, 46 S.W.3d at 879.

[10] *Id.* at 878.

[11] *Id.* at 879.

[12] *Id.* at 878.

[13] *See Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002)).

from making inferences based on medical history.[14] Furthermore, the analysis

of the expert's qualifications under section 74.351 is limited to the four corners

of the expert report and the expert's curriculum vitae.[15]

**Standard of Review**

We review for abuse of discretion a trial court's denial of a motion to

dismiss under section 74.351.[16] We also review for abuse of discretion a trial

court's determination of a physician's qualifications to offer an expert opinion

in a health care liability claim.[17] To determine whether a trial court abused its

discretion, we must decide whether the trial court acted without reference to

any guiding rules or principles; in other words, we must decide whether the act

was arbitrary or unreasonable.[18] An appellate court cannot conclude that a trial

---

[14] *Benish v. Grottie*, 281 S.W.3d 184, 195 (Tex. App.—Fort Worth 2009, pet. denied); *see also* Tex. R. Evid. 703 (providing that an expert may draw inferences from facts or data); Tex. R. Evid. 705 (providing that an expert may testify in terms of opinions and inferences).

[15] *Palacios*, 46 S.W.3d at 878.

[16] *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Palacios*, 46 S.W.3d at 877–78; *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, pet. denied).

[17] *Moore*, 269 S.W.3d at 139, 141.

[18] *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004); *Wright*, 79 S.W.3d at 52 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986)).

court abused its discretion merely because the appellate court would have ruled differently in the same circumstances.[19] However, a trial court has no discretion in determining what the law is or in applying the law to the facts, and "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion."[20]

## Dr. Gaines's Qualification to Offer Standard of Care Opinions Against Appellants

Within their first issue, Appellants contend that the trial court erred in denying their motion to dismiss because Dr. Gaines's report and curriculum vitae fail to establish that he is qualified to offer expert opinions regarding the standard of care applicable to each Appellant.

**Drs. McWatt and McCall**

Appellants contend that, although Dr. Gaines is an orthopedic surgeon, he is not qualified to address the standard of care applicable to family and occupational health practitioners such as Drs. McWatt and McCall. Appellants specifically argue that neither Dr. Gaines's affidavit nor his curriculum vitae "establishes that he practiced medicine in the same field of practice as the

---

[19] *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Downer*, 701 S.W.2d at 242.

[20] *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

9

physicians . . . whom he criticizes in his report," that "he has any experience in the Defendant physicians' same or similar field," or that "his diagnosis and treatment of patients such as [Everly], from the perspective of an orthopedic surgeon, is in any way similar to how [Everly] is to be treated by Concentra, a family practice or occupational health physician."

Civil practice and remedies code section 74.351 sets out specific requirements for a person to qualify to give an opinion on the elements required in an expert report.[21] To give an opinion about whether a physician breached the relevant standard of care, the expert giving the report must meet the requirements of section 74.401.[22] Among other things, section 74.401 requires that the expert be someone who is practicing medicine at the time the testimony is given or was practicing medicine at the time the claim arose; "has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim"; and "is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care."[23]

---

[21] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5).

[22] *Id.* § 74.351(r)(5)(A), § 74.401 (Vernon 2005).

[23] *Id.* § 74.401(a).

Under the requirements set out in section 74.401, therefore, the proper inquiry concerning whether a physician is qualified to testify is not the physician's area of practice but the stated familiarity with the issues involved in the claim before the court.[24] Thus, a physician "who is not of the same school of medicine [as the defendant] . . . is competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant."[25]

Here, the fact that Dr. Gaines is not a family practice or occupational health physician, as are Drs. McWatt and McCall, does not affect his qualifications to offer expert opinions regarding the standard of care applicable to their diagnosis, care, and treatment of Everly.[26] The relevant inquiry concerns Dr. Gaines's knowledge of and experience with the condition involved

---

[24] *See id.* § 74.401(a)(2) (requiring expert to have "knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition *involved in the claim*," not knowledge of the defendant doctor's area of speciality (emphasis added)); *see also Granbury Minor Emergency Clinic v. Thiel*, 296 S.W.3d 261, 267 (Tex. App.—Fort Worth 2009, no pet.); *Collini v. Pustejovsky*, 280 S.W.3d 456, 464 (Tex. App.—Fort Worth 2009, no pet.); *Blan v. Ali*, 7 S.W.3d 741, 745–46 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

[25] *Ehrlich*, 144 S.W.3d at 625; *see also Davisson v. Nicholson*, No. 02-09-00169-CV, 2010 WL 1137031, at *7 (Tex. App.—Fort Worth Mar. 25, 2010, no pet. h.) (op. on reh'g).

[26] *See Thiel*, 296 S.W.3d at 267; *Collini*, 280 S.W.3d at 464; *Blan*, 7 S.W.3d at 745–46.

in Everly's claim—hip pain and a cold, numb leg and foot due to RSD.[27]  Dr.

Gaines's report sets forth his knowledge and experience in diagnosing, caring

for, and treating people with RSD:

> The opinions given here are based upon the medical records submitted; and my experience in treating and examining hundreds of patients with the same or similar conditions as suffered by Amanda Everly.
>
> . . . I . . . keep abreast of pertinent professional literature on topics regarding surgery and reflex sympathetic dystrophy "RSD" including, but not limited to and [sic] the care and treatment of patients such as Ms. Amanda Everly.  I am familiar with the appropriate medical standards of care related to patients who suffer from foot drop, [and] RSD . . . .
>
> . . . I have substantial and extensive knowledge and experience in the practice of medicine, including work related injuries and the diagnosis and treatment of RSD, herniated and ruptured disc[,] the performance of surgical procedures, . . . and the physicians who treat said conditions . . . .
>
> . . . I have performed hundreds of back and spine surgeries in my career as an orthopedic surgeon and treated numerous patients with RSD.  I have been responsible for the examination, diagnosis, assessment, treatment, surgery, and pre and post operative patient care, and the oversight of hospital personnel regarding my patients who suffer the same type of injuries sustained by Ms. Everly and I have treated patients during my career under circumstances and conditions like or similar to those experienced by Ms. Everly.  I have extensive knowledge and experience in the diagnosis and evaluation of RSD, patients with foot drop including candidates for surgical problems, including

---

[27] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(r)(5)(A), 74.401(a)(2)-(3); *Thiel*, 296 S.W.3d at 267; *Ehrlich*, 144 S.W.3d at 625.

appropriate post operative care and diagnosis, and the duties and obligations and standards of care expected of hospital staff, employees and doctors.

In addition, the report states that Dr. Gaines has knowledge and experience working in "usual and customary office . . . settings involving patient care matters" including

consulting with and interacting with other medical practice areas for the appropriate care and treatment of patients with symptoms of RSD and the problems as were encountered in the care and treatment of Ms. Everly, including the diagnosis and treatment of RSD and the that [sic] conditions associated problems requiring appropriate care, diagnosis, treatment, and potential surgery.

Dr. Gaines's report and curriculum vitae establish that he has knowledge and experience with the diagnosis, care, and treatment of RSD including interaction with other practice areas in office settings. In this case, Everly claims that Drs. McWatt and McCall negligently diagnosed and treated her RSD and negligently governed or supervised the quality of medical or surgical care and treatment of her RSD. Accordingly, we hold that Dr. Gaines is qualified on the basis of training or experience to offer an expert opinion regarding accepted standards of medical care applicable to the diagnosis, care, and treatment of Everly's claimed injury, RSD, including standards applicable to Drs. McWatt and McCall in this case. We overrule this part of Appellants' first issue.

**DeForrest**

Appellants next argue that Dr. Gaines is not qualified to offer an expert opinion on the standard of care applicable to DeForrest because Dr. Gaines's report and curriculum vitae do "not establish[] that he is aware of, or that he has developed, any protocols or scope of practice for physician assistants working under a family practice/occupational medicine physician." Appellants cite Texas Occupation Code section 204.202, which provides:

> (a) The practice of a physician assistant includes providing medical services delegated by a supervising physician that are within the education, training, and experience of the physician assistant.
>
> . . . .
>
> (e) A physician assistant is the agent of the physician assistant's supervising physician for any medical services that are delegated by that physician and that:
>
> (1) are within the physician assistant's scope of practice; and
>
> (2) are delineated by protocols, practice guidelines, or practice directives established by the supervising physician.[28]

Appellants also argue that the report fails "to state whether [Dr. Gaines] has knowledge of the standard of care applicable to physician assistants such as

---

[28] Tex. Occ. Code Ann. § 204.202 (Vernon 2004).

14

P.A. DeForrest, or whether he has ever worked with or supervised physician assistants under these circumstances."

For a person giving an opinion about whether a health care provider, as opposed to a physician, breached the relevant standard of care, the expert must meet the requirements of civil practice and remedies code section 74.402.[29] Under that section, the expert must be someone who is "practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider"; "has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim"; and "is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care."[30]

Dr. Gaines's report expressly states that he has

substantial knowledge of the reasonable, prudent, and *accepted standards of medical care* for the diagnosis, care and treatment and/or management of patients involving diagnosis and treatment and/or surgery of medical problems under circumstances and/or conditions that are like or similar to those experienced by Ms. Everly, including the *doctors, hospital staff and employees*. [Emphasis added.]

---

[29] Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(B), § 74.402 (Vernon 2005).

[30] *Id.* § 74.402(b).

15

The report continues by stating that Dr. Gaines is familiar with the "reasonable, prudent and *accepted standards of care* in the diagnosis, care and treatment and management of patients who have received or are receiving care and follow up patient care were applicable to all *physicians and surgeons*, including the physicians involved in the type of care received by Ms. Everly." [Emphasis added.] However, there is nothing in Dr. Gaines's report or curriculum vitae stating or demonstrating that he has any experience specifically working with or supervising physician assistants, that his knowledge of accepted standards of medical care applicable to "doctors, hospital staff and employees" extends to physician assistants generally or those such as DeForrest who do not practice in a hospital setting, that he has knowledge of accepted standards of care for physician assistants' diagnosis, care, or treatment of RSD, or that he is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.[31]

---

[31] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(r)(5)(B), 74.402. *Compare Simonson v. Keppard*, 225 S.W.3d 868, 871–72 (Tex. App.—Dallas 2007, no pet.) (holding neurosurgeon was not qualified to offer expert opinion about conduct of nurse practitioner because "[n]owhere in his affidavit does [neurosurgeon] state that he either has knowledge of the standard of care applicable to nurse practitioners or that he has ever worked with or supervised nurse practitioners"), *and HN Tex. Props., L.P. v. Cox*, No. 02-09-00111-CV, 2009 WL 3337190, at *3–4 (Tex. App.—Fort Worth Oct. 15, 2009, no pet.) (mem. op.) (holding physician was not qualified to offer expert opinion about nursing standards because his "report and curriculum vitae demonstrate that he

Although Dr. Gaines is not automatically disqualified from giving an expert opinion regarding the accepted standards of care for a physician assistant such as DeForrest simply because he is an orthopedic surgeon instead of a physician assistant, we may not, through inferences or otherwise, fill in the gaps in his report where he fails to detail why or how he is qualified to offer an opinion about the applicable standard of care for a physician assistant or even expressly state that he is so qualified.[32] We hold, therefore, that Dr. Gaines did not demonstrate that he is qualified to offer an expert opinion about the standards of medical care applicable to DeForrest in this case and that the trial court abused its discretion by denying Appellants' motion to dismiss each of Everly's claims against DeForrest.[33] We sustain this part of Appellants' first issue.

---

has experience and expertise as an internal medicine physician and as a medical administrator, but there is nothing in his report or curriculum vitae demonstrating or explaining that he has knowledge of or is familiar with the accepted standard of care in this case for nurses or that he is qualified on the basis of training or experience to offer an expert opinion regarding the accepted standard of care in this case for nurses"), *with San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 814 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding physician was qualified to offer expert opinion regarding nursing care of decubitus ulcers because his report "specifically stated 'I am familiar with the standard of care for both nurses and physicians for the prevention and treatment of decubitus ulcers'").

[32] *See Cox,* 2009 WL 3337190, at *4; *Wright*, 79 S.W.3d at 53.

[33] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b).

**Concentra**

A plaintiff asserting a health care liability claim against a principal does not have to provide a separate expert report regarding the principal when the claim is premised on the acts of the principal's agent for which the plaintiff seeks to hold the principal vicariously liable.[34] Accordingly, Everly did not have to provide an expert report as to Concentra for those claims premised on Concentra's vicarious liability for the acts of Dr. McWatt, Dr. McCall, or DeForrest.[35] Rather, Everly had to provide an adequate expert report only as to Dr. McWatt, Dr. McCall, and DeForrest.[36] Because we have held that Dr. Gaines's report and curriculum vitae demonstrate that he is qualified to offer standard of care opinions regarding Drs. McWatt and McCall, we hold that they also demonstrate that he is qualified to offer standard of care opinions on Everly's vicarious liability claims against Concentra for the acts of Drs. McWatt and McCall. But because we have held that Dr. Gaines's report and curriculum vitae do not demonstrate that he is qualified to offer standard of care opinions

---

[34] *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008) ("When a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient.").

[35] *See id.*

[36] *See id.*

regarding DeForrest, we hold that they likewise do not demonstrate that he is qualified to offer standard of care opinions on Everly's vicarious liability claims against Concentra for the acts of DeForrest. Accordingly, we sustain in part and overrule in part this portion of Appellants' first issue.

### Dr. Gaines's Articulation of the Applicable Standards of Care and Appellants' Breach

Appellants also argue in their first issue that Dr. Gaines's report fails to meet statutory requirements because it "does not differentiate between the Defendants and articulate separate standards of care applicable to each provider, or how and in what manner each Defendant provider allegedly deviated from the applicable standard of care," and because "the report fails to identify even a single standard of care applicable to Appellants and the conduct that was required of them, *i.e.*, what assessments, work-ups, evaluations, or treatment each Defendant should have undertaken, and how and in what manner each Defendant failed to comply with that standard." Having already held that Dr. Gaines failed to demonstrate that he is qualified to offer an opinion about the applicable standard of care for DeForrest, we address only the adequacy of Dr. Gaines's articulation of the standards of care and breach applicable to Drs. McWatt and McCall and Concentra.

19

For the purpose of a statutory expert report, statements concerning the standard of care and breach need only identify what care was expected, and the care that was not given, with such specificity that inferences need not be indulged to discern them.[37] In addition, the same standard of care may apply to multiple defendants—even defendants that practice in different fields of medicine—if they owe the same duty to the patient.[38] An expert report may not, however, assert that multiple defendants are all negligent for failing to meet the standard of care without providing an explanation of how each defendant specifically breached the standard.[39]

---

[37] *Benish*, 281 S.W.3d at 198; *Thomas v. Alford*, 230 S.W.3d 853, 858 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

[38] *Compare In re Stacy K. Boone, P.A.*, 223 S.W.3d 398, 405–06 (Tex. App.—Amarillo 2006, no pet.) (holding report sufficiently set forth single standard of care applied to physicians and physician assistant because all participated in administering treatment), *and Barber v. Dean*, No. 02-07-00353-CV, 2009 WL 3490952, at *10 (Tex. App.—Fort Worth Oct. 29, 2009, no pet.) ("The report is not insufficient for 'grouping' Appellees together because Dr. Wagner specifically states that they all owed the same duty to ensure the proper positioning and padding of Malcolm's arm."), *with Polone v. Shearer*, 287 S.W.3d 229, 235 (Tex. App.—Fort Worth 2009, no pet.) (holding report that set forth single standard of care applicable to physician and physician assistant insufficient to represent a good faith effort because "[a]lthough the standards of care might be the same for both [the physician and physician assistant], the report does not specifically state as much").

[39] *Polone*, 287 S.W.3d at 233–34; *Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241, 244 (Tex. App.—Corpus Christi 2004, no pet.); *see also Wood v. Tice*, 988 S.W.2d 829, 831 (Tex. App.—San Antonio 1999, pet. denied) (stating that the report must specifically refer to the defendant and

Dr. Gaines's report sets forth the following opinions regarding the applicable standards of care and breach:

> While at Concentra [Everly] utilized three different physicians in the continuity of her care[,] Dr. McWatt, Dr. McCall and Angela Dr. [sic] Deforest [sic], ("P.A."). The records indicate that that [sic] presented with some cardinal signs of RSD [reflex sympathetic dystrophy] as well as a disk injury. Unfortunately she was only partially worked up for hip strain, ruptured disks and including intracranial pathology without specific findings. Concentra by and through its physicians identified above misdiagnosed the condition and failed to provide any treatment to anything other than the left hip with their participation in her medical treatment.
>
> . . . The literature generally available to physicians who routinely treat patients with on the job injuries such as the physicians who work for Concentra including the physicians in the case[,] Dr. McWatt, Dr. McCall and physician assistant ("P.A.") Dr. Deforest [sic] indicates that the most successful treatment for RSD, which in my opinion she exhibits, is treatment given within the first six months from the time of the injury and after that the probability of success diminishes significantly (see attached as Exhibit "B" an article which is incorporated herein as if set forth at length).
>
> . . . [I]t is my opinion that Concentra Medical [C]enter and Dr's. [sic] McWatt, McCall and ("P.A.") Deforest [sic], within a reasonable medical degree of certainty, breached the applicable medical standards of care to Ms. Everly. Specifically, they failed to provide treatment for RSD within the first six months of her injury for the condition she was suffering, which resulted in a permanent foot drop.

Exhibit "B," attached to Dr. Gaines's report, states that "early sympathetic block combined with physical therapy is the most widely

discuss how that defendant breached the applicable standard of care).

21

recommended treatment" for RSD and that one published article "found that the most important factor in predicting a favorable outcome was an interval between onset and treatment [of RSD] of less than 6 months."

Everly alleges that each Appellant committed "one or more" acts of negligence—negligent diagnosis of Everly's condition, negligent governance and supervision of Everly's care and treatment, and negligent care and treatment of Everly. We will address the adequacy of Dr. Gaines's articulation of the applicable standards of care and breach with respect to each act of alleged negligence in turn.

**Negligent Diagnosis**

Everly claims that Appellants were negligent by "[f]ailing to properly examine and diagnose [her] condition." Dr. Gaines's report states that Everly "presented with some cardinal signs" of RSD and that Appellants "misdiagnosed the condition." The report fails, however, to identify the cardinal signs of RSD. Moreover, the report does not indicate what specific tests, observations, or other diagnostic measures Drs. McWatt and McCall and Concentra should have used to properly diagnose Everly's RSD. Dr. Gaines's report therefore fails to discuss the applicable standards of care with sufficient specificity to inform Drs. McWatt and McCall and Concentra of the conduct Everly has called into question and to provide a basis for the trial court to

22

conclude that her claims against them of negligent diagnosis have merit. Thus, the report does not constitute a good faith effort to comply with the statutory definition of an expert report with respect to Everly's claims that Drs. McWatt and McCall and Concentra failed to properly examine and diagnose her condition.[40] We hold that the trial court abused its discretion by denying Appellants' motion to dismiss Everly's negligent diagnosis claims against Drs. McWatt and McCall and Concentra. We sustain this part of Appellants' first issue.

**Negligent Governance and Supervision**

Everly also claims that each Appellant was negligent by "[f]ailing to timely or properly or adequately govern and/or supervise the quality of medical and surgical care and treatment of [Everly]." Dr. Gaines's report, however, fails to state any standard of care applicable to any Appellant's governance or supervision of the care and treatment Everly received. Accordingly, Dr. Gaines's report does not discuss the applicable standard of care with sufficient specificity to inform Drs. McWatt and McCall and Concentra of the conduct Everly has called into question and to provide a basis for the trial court to conclude that her claims against them of negligent governance and supervision

---

[40] *See Palacios*, 46 S.W.3d at 878.

23

have merit. Thus, the report does not constitute a good faith effort to comply with the statutory definition of an expert report with respect to Everly's claims that Drs. McWatt and McCall and Concentra failed to timely or properly or adequately govern and/or supervise the quality of Everly's medical care and surgical care and treatment.[41] We hold, therefore, that the trial court abused its discretion by denying Appellants' motion to dismiss Everly's negligent governance and supervision claims against Drs. McWatt and McCall and Concentra. We sustain this part of Appellants' first issue.

**Negligent Care and Treatment**

Everly further claims that each Appellant was negligent by "[f]ailing to timely or properly or adequately provide such quality of medical care and treatment necessary to prevent [Everly's] injuries." Dr. Gaines's report states that "[t]he literature generally available to physicians who routinely treat patients with on the job injuries such as the physicians who work for Concentra including the physicians in the case[,] Dr. McWatt, Dr. McCall and physician assistant ("P.A.") Dr. Deforest[,] [sic] indicates that the most successful treatment for RSD, which in my opinion she exhibits, is treatment given within the first six months from the time of the injury and after that the probability of

---

[41] *See George*, 261 S.W.3d at 292–93.

24

success diminishes significantly (see attached as Exhibit "B" an article which is incorporated herein as if set forth at length)." Exhibit "B" states that "early sympathetic block combined with physical therapy is the most widely recommended treatment" for RSD and that one published article "found that the most important factor in predicting a favorable outcome was an interval between onset and treatment [of RSD] of less than 6 months." Dr. Gaines's report also states that "Concentra Medical [C]enter and Dr's. [sic] McWatt, McCall, and ("P.A.") Deforest [sic] . . . breached the applicable medical standards of care to Ms. Everly. Specifically, they failed to provide treatment for RSD within the first six months of her injury."

Dr. Gaines's report expressly states that "[w]hile at Concentra [Everly] utilized" Dr. McWatt and Dr. McCall "in the continuity of her care." It also recites that the standard of care for Dr. McWatt and Dr. McCall requires that treatment for RSD be given within the first six months from the time of the injury. The report further states Dr. Gaines's opinion that Drs. McWatt and McCall and Concentra breached that standard by failing to provide treatment for Everly's RSD within the first six months of her injury.[42] Thus, the report

---

[42] *See Barber*, 2009 WL 3490952, at *10 (holding that the same standard of care may apply to more than one defendant if they owe the same duty to the patient); *see also Polone*, 287 S.W.3d at 235.

25

discusses the standards of care specific to Drs. McWatt and McCall and Concentra and states how they breached that standard with sufficient specificity to inform them of the conduct Everly has called into question and to provide a basis for the trial court to conclude that her claims of negligent care and treatment have merit. The report, therefore, constitutes a good faith effort to comply with the statutory definition of an expert report with respect to Everly's claim that Drs. McWatt and McCall and Concentra failed to timely or properly or adequately provide such quality of medical care and treatment necessary to prevent Everly's injuries.[43] We hold that the trial court did not abuse its discretion by denying Appellants' motion to dismiss Everly's negligent care and treatment claims against Drs. McWatt and McCall and Concentra. We overrule this part of Appellants' first issue.

### Dr. Gaines's Causation Opinion

Also within their first issue, Appellants argue that the causation opinion contained in Dr. Gaines's report fails to meet statutory requirements because it "is conclusory and fails to detail how and in what manner the conduct of each of the Defendant health care providers caused [Everly's] claimed injuries."

---

[43] *See George*, 261 S.W.3d at 292–93.

26

Section 74.351 requires an expert report to provide a fair summary of the expert's opinions regarding the causal relationship between the defendant's failure to meet the standard of care and the injury, harm, or damages claimed.[44] To do this, the report must not be conclusory in its explanation of causation; it must explain the basis of its statements sufficiently to link its conclusions to the facts.[45] And an expert report may not assert that multiple defendants are all negligent without providing an explanation of how each defendant's specific breach of the standard of care caused or contributed to the cause of injury.[46]

Dr. Gaines's report sets forth his causation opinion as follows:

[The defendants] failed to provide treatment for RSD within the first six months of [Everly's] injury for the condition she was suffering, *which resulted in a permanent foot drop*. This will require subsequent lifelong medical attention and probably surgical intervention to correct the problems created by Concentra and the physicians identified above.

. . . It is my opinion, based upon reasonable medical certainty, my review of the records and my knowledge, skills, training and experience, that *the deviations and breaches of the applicable medical standards of care* by Concentra [M]edical

---

[44] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).

[45] *Polone*, 287 S.W.3d at 236; *see Wright*, 79 S.W.3d at 52–53; *see also Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389–90 n.32 (Tex. 2008) (defining conclusory as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based").

[46] *Polone*, 287 S.W.3d at 233–34; *Taylor*, 169 S.W.3d ay 244.

27

[C]enter by and through its physicians Gordon McWatt, D.O., Norman McCall, M.D. and Angela Deforest [sic], P.A. *caused Ms. Everly's extensive damages, injuries, unnecessary physical and mental pain and suffering*. These deviations and breaches of the applicable medical standards of care will further result in needless and unnecessary medical treatment and potential surgery along with its inherent risk, medical charges, care, treatment, and billing that would not have been required, but for these deviations and breaches in the applicable medical standard of care. [Emphasis added.]

Dr. Gaines's report specifically states that Drs. McWatt and McCall and Concentra each failed to treat Everly's RSD within six months of her injury and that this failure resulted in Everly's permanent foot drop. Although Appellants argue that the report "fails to detail how and in what manner" their actions caused Everly's claimed injury, it is enough that Dr. Gaines set forth his opinion that their breaches in the standard of care by delaying treatment of Everly's RSD for at least six months caused Everly's permanent foot drop.[47]

---

[47] *Compare Thiel*, 296 S.W.3d at 273 ("It is enough that Dr. Spangler opined that Dr. Salas's breaches of the standard of care delayed the diagnosis of Thiel's appendicitis so that Thiel's appendix ruptured after Dr. Salas's September 6, 2006 examination and caused Thiel's colon to become gangrenous."), *and Simonson*, 225 S.W.3d at 875–76 (holding causation opinion not conclusory where "Dr. Thomas explained in his report that an early diagnosis [of cerebellar infarction or hemorrhage] would have either prevented neurological deterioration or at least Keppard would have been admitted into the hospital where life-saving measures could have been taken to save her life"), *with Estorque v. Schafer*, 302 S.W.3d 19, 28 (Tex. App.—Fort Worth 2009, no pet.) (holding that the expert report was not sufficient because "Dr. Miller's report does not explain the basis of his opinions as to causation; his report leaves gaps by not explaining how or why the physicians' failure to consult a

Accordingly, we hold that the report provides a fair summary of Dr. Gaines's opinion regarding the causal relationship between the failures of Drs. McWatt and McCall and Concentra to meet the standard of care and the injury, harm, or damages claimed in this suit.[48] We overrule this part of Appellants' first issue.

## Attorney's Fees

In Appellants' second issue, they contend that the trial court erred by failing to award them attorney's fees under section 74.351(b)(1) of the Texas Civil Practice and Remedies Code as a sanction for Everly's failure to provide an expert report as required by statute.[49]

Section 74.351(b)(1) states:

> (b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), *the court*, on the motion of the affected physician or health care provider, *shall*, subject to Subsection (c), *enter an order that*:

---

urologist or gynecologist caused worsening or progression of Shirley's listed conditions").

[48] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).

[49] *Aviles v. Aguirre*, 292 S.W.3d 648, 648 (Tex. 2009) (enforcing mandatory attorney's fees award under former Texas Revised Civil Statute article 4590i and noting similar mandatory provision under Texas Civil Practice and Remedies Code § 74.351(b)(1)).

29

> (1) *awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider* . . . .[50]

A report "has not been served" within the meaning of section 74.351(b) if it is timely but deficient following a thirty-day extension under section 74.351(c) for the plaintiff to cure any deficiencies.[51]

Although Everly served Dr. Gaines's report, we have held that his report is not an "expert report" under section 74.351 with respect to Everly's claims against DeForrest because Dr. Gaines's report does not show that he is qualified to render standard of care opinions for DeForrest.[52] Section 74.351(b)(1), therefore, requires that the trial court "shall" award reasonable attorney's fees and costs of court to DeForrest.[53] Accordingly, we sustain

---

[50] Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(1) (emphasis added).

[51] *Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008) (holding that "an expert report has not been served" within the meaning of section 74.351(b) when an inadequate report has been served following a 30-day extension under section 74.351(c)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) ("If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency.").

[52] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 878.

[53] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(1).

Appellants' second issue with respect to each of Everly's claims against DeForrest.

But we also have held that Dr. Gaines's report is an "expert report" under section 74.351 with respect to Everly's negligent care and treatment claims against Drs. McWatt and McCall and Concentra.[54]  Accordingly, they are not entitled to receive attorney's fees and costs of court from Everly under section 74.351(b)(1).[55]  We overrule Appellants' second issue with respect to Everly's claims against Drs. McWatt and McCall and Concentra.

## Conclusion

We affirm in part, reverse in part, render in part, and remand in part.

We reverse the trial court's order denying Appellants' motion to dismiss as to all claims against DeForrest, and we remand this cause to the trial court for entry of a judgment dismissing Everly's claims against DeForrest and awarding reasonable attorney's fees and court costs to DeForrest.

We reverse the trial court's order denying Appellants' motion to dismiss as to Everly's negligent diagnosis claims and negligent governance and supervision claims against Drs. McWatt and McCall and Concentra and render judgment dismissing those claims with prejudice.

---

[54] *See id*. § 74.351(*l*).

[55] *See id.* § 74.351(b)(1).

We affirm the trial court's order denying Drs. McWatt and McCall and Concentra's motion to dismiss as to Everly's negligent care and treatment claims and denying their requests for attorney's fees and costs, and we remand this case for further proceedings regarding those claims.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT and MEIER, JJ.

DELIVERED:  April 1, 2010

32