COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-455-CV

 

 

CONCENTRA HEALTH SERVICES,                                        APPELLANTS

INC., GORDON MCWATT, D.O., 

NORMAN MCCALL, M.D., ANGELA 

DEFORREST, P.A., AND ANGELA 

DEFORREST, P.A., INDIVIDUALLY

 

                                                   V.

 

AMANDA G. EVERLY, A/K/A                                                    APPELLEE

AMANDA G. EVERLY 

WAGENKNECHT

 

                                              ------------

 

            FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








In this
interlocutory appeal, Appellants Concentra Health Services, Inc. (Concentra),
Gordon McWatt, D.O., Norman McCall, M.D., Angela DeForrest, P.A., and Angela
DeForrest, P.A., Individually, appeal the trial court=s denial
of their motion to dismiss the health care liability claims of Appellee Amanda
G. Everly, a/k/a Amanda G. Everly Wagenknecht (Everly) for failure to comply
with section 74.351 of the Texas Civil Practice & Remedies Code.[2]  Appellants also appeal the trial court=s denial
of their request for attorney=s fees
as a sanction for Everly=s failure to tender an adequate
expert report.  Because we hold that the
expert report provided by Everly was adequate for some of Everly=s claims
but not for others, we affirm in part, reverse in part, render in part, and
remand in part.

Background Facts








Everly
injured her left hip at work on January 22, 2006, while moving a twenty-pound
box from above her head.  The next day,
Everly went to Concentra complaining of pain in her hip and a cold, tingling
sensation in her left leg and foot. 
DeForrest, a physician assistant at Concentra, examined Everly and
confirmed that her left leg and foot were cool to the touch.  Hip and pelvis x-rays were ordered, and
Everly was assessed as having a hip strain and hip and pelvic pain.  Everly was given pain medication and a
walking cane.  DeForrest discussed the
diagnosis and treatment plan with Everly and told Everly to return to Concentra
on January 26, 2006, or earlier if needed.

Everly
returned to Concentra on January 26 and was again seen by DeForrest, who Everly
alleges was under the supervision of Dr. McWatt, a family practice and
occupational health physician at Concentra. 
Everly=s pleadings and the expert
report at issue do not address Everly=s
complaints, symptoms, diagnosis, care, or treatment at this visit.  Everly returned to Concentra for another
follow-up visit the next day, and her left hip was examined by Dr. McCall, a
Concentra occupational health physician. 
Everly stated that her left hip was not better and that her left leg was
cold and numb.  Dr. McCall assessed
Everly as having a left hip strain, prescribed a nonsteroidal anti‑inflammatory
drug, and ordered an MRI.  Dr. McCall
instructed Everly to return twenty-four hours after her MRI, but Everly never
returned to Concentra.  Some time
afterward, Everly developed a permanent foot drop.

Procedural History

On
January 23, 2008, Everly filed this suit asserting health care liability claims
against Concentra, Dr. McWatt, Dr. McCall, and DeForrest arising from the
treatment she received in January 2006. 
Everly alleged that each defendant had committed Aone or
more@ of the
following acts of negligence:

$       
failing to properly examine and diagnose Everly=s condition;








$       
failing to timely or properly or adequately govern and/or supervise
the quality of medical care and surgical care and treatment of Everly; and

$       
failing to timely or properly or adequately provide such quality of
medical care and treatment necessary to prevent Everly=s injuries.

Everly also claimed that
Concentra was vicariously liable for its employees=
negligence.  Everly sought damages from
each defendant for pain and suffering, medical expenses, disfigurement,
physical impairment, mental anguish, lost earnings, and the loss of earning
capacity.

On May
21, 2008, Everly filed the expert report and curriculum vitae of Joseph H.
Gaines, M.D., an orthopedic surgeon, stating that Appellants failed to diagnose
and treat Everly for reflex sympathetic dystrophy (RSD) and that their
negligence caused her to experience permanent foot drop.  Appellants jointly objected to the
sufficiency of the report and moved to dismiss under Texas Civil Practice and
Remedies Code section 74.351.[3]  The trial court sustained Appellants=
objections and granted Everly thirty days to cure the deficiencies and serve a
sufficient expert report.[4]








Everly
served a supplemental report on September 2, 2008.  Appellants again jointly objected to the
report as supplemented and moved to dismiss under section 74.531, attacking Dr.
Gaines=s
qualifications, contending that his report failed to adequately set forth his
opinions regarding the applicable standard of care, breach, and causation, and
seeking attorney=s fees and costs.  The trial court denied Appellants= motion
by order dated November 13, 2008.  This
interlocutory appeal followed.

Issues








In their
first issue, Appellants bring three separate grounds in support of their
contention that the trial court erred by denying their motion to dismiss Everly=s
claims.  First, Appellants argue that Dr.
Gaines=s report
and curriculum vitae fail to establish that Dr. Gaines, an orthopedic surgeon,
is qualified to offer standard of care opinions for each Appellant because he
has not demonstrated training or experience in each Appellant=s field
of medicine.  Second, Appellants assert
that the report fails to articulate a separate, applicable standard of care for
each Appellant or how each Appellant breached the standard of care.  Third, Appellants contend that the report
fails to adequately explain Dr. Gaines=s
opinions regarding a causal connection between each Appellant=s
conduct and Everly=s claimed injuries.  In their second issue, Appellants argue that
the trial court erred by denying their request for attorney=s fees
and costs based on Everly=s failure to tender an adequate
expert report.[5]

Expert
Reports in Health Care Liability Claims

Texas
Civil Practice and Remedies Code section 74.351 requires a health care
liability claimant to timely serve an expert report that provides a fair
summary of a qualified expert=s
opinions as to the applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards,
and the causal relationship between that failure and the injury, harm, or
damages claimed.[6]  A defendant may challenge the adequacy of a
report, and the trial court must grant a motion to dismiss the plaintiff=s claims
if it finds, after a hearing, that Athe
report does not represent an objective good faith effort to comply with the
definition of an expert report@ in the
statute.[7]








To
constitute an Aobjective good faith effort@ to meet
the statutory definition, an expert report must Adiscuss
the standard of care, breach, and causation with sufficient specificity to
inform the defendant of the conduct the plaintiff has called into question and
to provide a basis for the trial court to conclude that the claims have merit.@[8]  A report does not fulfill this requirement if
it merely states the expert=s
conclusions or if it omits any of the statutory requirements.[9]  However, the report Aneed not
marshal all the plaintiff=s proof@[10] and Adoes not
have to meet the same requirements as the evidence offered in a summary‑judgment
proceeding or at trial.@[11] 








When
reviewing the adequacy of a report, the only information relevant to the
inquiry is the information contained within the four corners of the document.[12]  This requirement prevents a court from
filling gaps in a report by drawing inferences or guessing as to what the
expert likely meant or intended.[13]  Section 74.351 does not, however, prohibit
experts, as opposed to courts, from making inferences based on medical history.[14]  Furthermore, the analysis of the expert=s
qualifications under section 74.351 is limited to the four corners of the
expert report and the expert=s
curriculum vitae.[15]

Standard of Review








We
review for abuse of discretion a trial court=s denial
of a motion to dismiss under section 74.351.[16]  We also review for abuse of discretion a trial
court=s
determination of a physician=s
qualifications to offer an expert opinion in a health care liability claim.[17]  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.[18]  An appellate court cannot conclude that a
trial court abused its discretion merely because the appellate court would have
ruled differently in the same circumstances.[19]  However, a trial court has no discretion in
determining what the law is or in applying the law to the facts, and Aa clear
failure by the trial court to analyze or apply the law correctly will constitute
an abuse of discretion.@[20]

Dr. Gaines=s Qualification to Offer
Standard of Care 

Opinions Against Appellants

Within
their first issue, Appellants contend that the trial court erred in denying
their motion to dismiss because Dr. Gaines=s report
and curriculum vitae fail to establish that he is qualified to offer expert
opinions regarding the standard of care applicable to each Appellant.

Drs. McWatt and McCall








Appellants
contend that, although Dr. Gaines is an orthopedic surgeon, he is not qualified
to address the standard of care applicable to family and occupational health
practitioners such as Drs. McWatt and McCall. 
Appellants specifically argue that neither Dr. Gaines=s
affidavit nor his curriculum vitae Aestablishes
that he practiced medicine in the same field of practice as the
physicians . . . whom he criticizes in his report,@ that Ahe has
any experience in the Defendant physicians= same or
similar field,@ or that Ahis
diagnosis and treatment of patients such as [Everly], from the perspective of
an orthopedic surgeon, is in any way similar to how [Everly] is to be treated
by Concentra, a family practice or occupational health physician.@

Civil
practice and remedies code section 74.351 sets out specific requirements for a
person to qualify to give an opinion on the elements required in an expert
report.[21]  To give an opinion about whether a physician
breached the relevant standard of care, the expert giving the report must meet
the requirements of section 74.401.[22]  Among other things, section 74.401 requires
that the expert be someone who is practicing medicine at the time the testimony
is given or was practicing medicine at the time the claim arose; Ahas
knowledge of accepted standards of medical care for the diagnosis, care, or
treatment of the illness, injury, or condition involved in the claim@; and Ais
qualified on the basis of training or experience to offer an expert opinion
regarding those accepted standards of medical care.@[23]








Under
the requirements set out in section 74.401, therefore, the proper inquiry
concerning whether a physician is qualified to testify is not the physician=s area
of practice but the stated familiarity with the issues involved in the claim
before the court.[24]  Thus, a physician Awho is
not of the same school of medicine [as the
defendant] . . . is competent to testify if he has
practical knowledge of what is usually and customarily done by a practitioner
under circumstances similar to those confronting the defendant.@[25]








Here,
the fact that Dr. Gaines is not a family practice or occupational health
physician, as are Drs. McWatt and McCall, does not affect his qualifications to
offer expert opinions regarding the standard of care applicable to their
diagnosis, care, and treatment of Everly.[26]  The relevant inquiry concerns Dr. Gaines=s knowledge
of and experience with the condition involved in Everly=s claimChip pain
and a cold, numb leg and foot due to RSD.[27]  Dr. Gaines=s report
sets forth his knowledge and experience in diagnosing, caring for, and treating
people with RSD:

The
opinions given here are based upon the medical records submitted; and my
experience in treating and examining hundreds of patients with the same or
similar conditions as suffered by Amanda Everly.

. . . I . . . keep abreast of pertinent professional
literature on topics regarding surgery and reflex sympathetic dystrophy ARSD@ including, but not
limited to and [sic] the care and treatment of patients such as Ms. Amanda
Everly.  I am familiar with the
appropriate medical standards of care related to patients who suffer from foot
drop, [and] RSD . . . .

. . . I have substantial and extensive knowledge and experience in the
practice of medicine, including work related injuries and the diagnosis and
treatment of RSD, herniated and ruptured disc[,] the performance of surgical
procedures, . . . and the physicians who treat said conditions . . . .








. . . I have performed hundreds of back and spine surgeries in my
career as an orthopedic surgeon and treated numerous patients with RSD.  I have been responsible for the examination,
diagnosis, assessment, treatment, surgery, and pre and post operative patient
care, and the oversight of hospital personnel regarding my patients who suffer
the same type of injuries sustained by Ms. Everly and I have treated patients
during my career under circumstances and conditions like or similar to those
experienced by Ms. Everly.  I have
extensive knowledge and experience in the diagnosis and evaluation of RSD,
patients with foot drop including candidates for surgical problems, including
appropriate post operative care and diagnosis, and the duties and obligations
and standards of care expected of hospital staff, employees and doctors.

In addition, the report states
that Dr. Gaines has knowledge and experience working in Ausual
and customary office . . . settings involving patient care
matters@
including

consulting
with and interacting with other medical practice areas for the appropriate care
and treatment of patients with symptoms of RSD and the problems as were encountered
in the care and treatment of Ms. Everly, including the diagnosis and treatment
of RSD and the that [sic] conditions associated problems requiring appropriate
care, diagnosis, treatment, and potential surgery.

Dr.
Gaines=s report
and curriculum vitae establish that he has knowledge and experience with the
diagnosis, care, and treatment of RSD including interaction with other practice
areas in office settings.  In this case,
Everly claims that Drs. McWatt and McCall negligently diagnosed and treated her
RSD and negligently governed or supervised the quality of medical or surgical
care and treatment of her RSD. 
Accordingly, we hold that Dr. Gaines is qualified on the basis of training
or experience to offer an expert opinion regarding accepted standards of
medical care applicable to the diagnosis, care, and treatment of Everly=s
claimed injury, RSD, including standards applicable to Drs. McWatt and McCall
in this case.  We overrule this part of
Appellants= first issue.








DeForrest   

Appellants
next argue that Dr. Gaines is not qualified to offer an expert opinion on the
standard of care applicable to DeForrest because Dr. Gaines=s report
and curriculum vitae do Anot establish[] that he is aware
of, or that he has developed, any protocols or scope of practice for physician
assistants working under a family practice/occupational medicine physician.@  Appellants cite Texas Occupation Code section
204.202, which provides:

(a) The practice of a physician assistant
includes providing medical services delegated by a supervising physician that
are within the education, training, and experience of the physician assistant.

 

. . . . 

 

(e) A physician assistant is the agent of the
physician assistant=s supervising physician
for any medical services that are delegated by that physician and that:

 

(1) are within the physician assistant=s scope of practice; and 

 

(2) are
delineated by protocols, practice guidelines, or practice directives
established by the supervising physician.[28]








Appellants also argue that the
report fails Ato state whether [Dr. Gaines]
has knowledge of the standard of care applicable to physician assistants such
as P.A. DeForrest, or whether he has ever worked with or supervised physician
assistants under these circumstances.@

For a
person giving an opinion about whether a health care provider, as opposed to a
physician, breached the relevant standard of care, the expert must meet the
requirements of civil practice and remedies code section 74.402.[29]  Under that section, the expert must be
someone who is Apracticing health care in a
field of practice that involves the same type of care or treatment as that
delivered by the defendant health care provider@; Ahas
knowledge of accepted standards of care for health care providers for the
diagnosis, care, or treatment of the illness, injury, or condition involved in
the claim@; and Ais
qualified on the basis of training or experience to offer an expert opinion
regarding those accepted standards of health care.@[30]

Dr.
Gaines=s report
expressly states that he has 

substantial
knowledge of the reasonable, prudent, and accepted standards of medical care
for the diagnosis, care and treatment and/or management of patients
involving diagnosis and treatment and/or surgery of medical problems under
circumstances and/or conditions that are like or similar to those experienced
by Ms. Everly, including the doctors, hospital staff and employees.  [Emphasis added.]








The report continues by stating
that Dr. Gaines is familiar with the Areasonable,
prudent and accepted standards of care in the diagnosis, care and treatment
and management of patients who have received or are receiving care and follow
up patient care were applicable to all physicians and surgeons,
including the physicians involved in the type of care received by Ms. Everly.@  [Emphasis added.]  However, there is nothing in Dr. Gaines=s report
or curriculum vitae stating or demonstrating that he has any experience
specifically working with or supervising physician assistants, that his
knowledge of accepted standards of medical care applicable to Adoctors,
hospital staff and employees@ extends
to physician assistants generally or those such as DeForrest who do not
practice in a hospital setting, that he has knowledge of accepted standards of
care for physician assistants=
diagnosis, care, or treatment of RSD, or that he is qualified on the basis of
training or experience to offer an expert opinion regarding those accepted
standards of care.[31]








Although
Dr. Gaines is not automatically disqualified from giving an expert opinion
regarding the accepted standards of care for a physician assistant such as
DeForrest simply because he is an orthopedic surgeon instead of a physician assistant,
we may not, through inferences or otherwise, fill in the gaps in his report
where he fails to detail why or how he is qualified to offer an opinion about
the applicable standard of care for a physician assistant or even expressly
state that he is so qualified.[32]  We hold, therefore, that Dr. Gaines did not
demonstrate that he is qualified to offer an expert opinion about the standards
of medical care applicable to DeForrest in this case and that the trial court
abused its discretion by denying Appellants= motion
to dismiss each of Everly=s claims against DeForrest.[33]  We sustain this part of Appellants= first
issue.








Concentra








A
plaintiff asserting a health care liability claim against a principal does not
have to provide a separate expert report regarding the principal when the claim
is premised on the acts of the principal=s agent
for which the plaintiff seeks to hold the principal vicariously liable.[34]  Accordingly, Everly did not have to provide
an expert report as to Concentra for those claims premised on Concentra=s
vicarious liability for the acts of Dr. McWatt, Dr. McCall, or DeForrest.[35]  Rather, Everly had to provide an adequate
expert report only as to Dr. McWatt, Dr. McCall, and DeForrest.[36]  Because we have held that Dr. Gaines=s report
and curriculum vitae demonstrate that he is qualified to offer standard of care
opinions regarding Drs. McWatt and McCall, we hold that they also demonstrate
that he is qualified to offer standard of care opinions on Everly=s
vicarious liability claims against Concentra for the acts of Drs. McWatt and
McCall.  But because we have held that
Dr. Gaines=s report and  curriculum vitae do not demonstrate that he
is qualified to offer standard of care opinions regarding DeForrest, we hold
that they likewise do not demonstrate that he is qualified to offer standard of
care opinions on Everly=s vicarious liability claims
against Concentra for the acts of DeForrest. 
Accordingly, we sustain in part and overrule in part this portion of
Appellants= first issue.

Dr. Gaines=s Articulation of the
Applicable

Standards of Care and Appellants= Breach

Appellants
also argue in their first issue that Dr. Gaines=s report
fails to meet statutory requirements because it Adoes not
differentiate between the Defendants and articulate separate standards of care
applicable to each provider, or how and in what manner each Defendant provider
allegedly deviated from the applicable standard of care,@ and
because Athe
report fails to identify even a single standard of care applicable to
Appellants and the conduct that was required of them, i.e., what
assessments, work-ups, evaluations, or treatment each Defendant should have
undertaken, and how and in what manner each Defendant failed to comply with
that standard.@ 
Having already held that Dr. Gaines failed to demonstrate that he is
qualified to offer an opinion about the applicable standard of care for
DeForrest, we address only the adequacy of Dr. Gaines=s
articulation of the standards of care and breach applicable to Drs. McWatt and
McCall and Concentra.








For the
purpose of a statutory expert report, statements concerning the standard of
care and breach need only identify what care was expected, and the care that
was not given, with such specificity that inferences need not be indulged to
discern them.[37]  In addition, the same standard of care may
apply to multiple defendantsCeven
defendants that practice in different fields of medicineCif they
owe the same duty to the patient.[38]  An expert report may not, however, assert
that multiple defendants are all negligent for failing to meet the standard of
care without providing an explanation of how each defendant specifically
breached the standard.[39]









Dr.
Gaines=s report
sets forth the following opinions regarding the applicable standards of care
and breach:

While
at Concentra [Everly] utilized three different physicians in the continuity of
her care[,] Dr. McWatt, Dr. McCall and Angela Dr. [sic] Deforest [sic], (AP.A.@).  The records indicate that that [sic]
presented with some cardinal signs of RSD [reflex sympathetic dystrophy] as
well as a disk injury.  Unfortunately she
was only partially worked up for hip strain, ruptured disks and including
intracranial pathology without specific findings.  Concentra by and through its physicians
identified above misdiagnosed the condition and failed to provide any treatment
to anything other than the left hip with their participation in her medical
treatment.

. . . The literature generally available to physicians
who routinely treat patients with on the job injuries such as the physicians
who work for Concentra including the physicians in the case[,] Dr. McWatt, Dr.
McCall and physician assistant (AP.A.@) Dr. Deforest [sic] indicates that the most
successful treatment for RSD, which in my opinion she exhibits, is treatment
given within the first six months from the time of the injury and after that
the probability of success diminishes significantly (see attached as Exhibit AB@ an article which is
incorporated herein as if set forth at length).

. . . [I]t is my opinion that Concentra Medical
[C]enter and Dr=s. [sic] McWatt,
McCall and (AP.A.@) Deforest [sic], within
a reasonable medical degree of certainty, breached the applicable medical
standards of care to Ms. Everly. 
Specifically, they failed to provide treatment for RSD within the first
six months of her injury for the condition she was suffering, which resulted in
a permanent foot drop.








Exhibit AB,@
attached to Dr. Gaines=s report, states that Aearly
sympathetic block combined with physical therapy is the most widely recommended
treatment@ for RSD and that one published
article Afound
that the most important factor in predicting a favorable outcome was an
interval between onset and treatment [of RSD] of less than 6 months.@

Everly
alleges that each Appellant committed Aone or
more@ acts of
negligenceCnegligent diagnosis of Everly=s
condition, negligent governance and supervision of Everly=s care
and treatment, and negligent care and treatment of Everly.  We will address the adequacy of Dr. Gaines=s
articulation of the applicable standards of care and breach with respect to
each act of alleged negligence in turn.

Negligent Diagnosis








Everly
claims that Appellants were negligent by A[f]ailing
to properly examine and diagnose [her] condition.@  Dr. Gaines=s report
states that Everly Apresented with some cardinal
signs@ of RSD
and that Appellants Amisdiagnosed the condition.@  The report fails, however, to identify the
cardinal signs of RSD.  Moreover, the
report does not indicate what specific tests, observations, or other diagnostic
measures Drs. McWatt and McCall and Concentra should have used to properly
diagnose Everly=s RSD.  Dr. Gaines=s report
therefore fails to discuss the applicable standards of care with sufficient
specificity to inform Drs. McWatt and McCall and Concentra of the conduct
Everly has called into question and to provide a basis for the trial court to
conclude that her claims against them of negligent diagnosis have merit.  Thus, the report does not constitute a good
faith effort to comply with the statutory definition of an expert report with
respect to Everly=s claims that Drs. McWatt and
McCall and Concentra failed to properly examine and diagnose her condition.[40]  We hold that the trial court abused its
discretion by denying Appellants= motion
to dismiss Everly=s negligent diagnosis claims
against Drs. McWatt and McCall and Concentra. 
We sustain this part of Appellants= first
issue.

Negligent Governance and Supervision








Everly
also claims that each Appellant was negligent by A[f]ailing
to timely or properly or adequately govern and/or supervise the quality of
medical and surgical care and treatment of [Everly].@  Dr. Gaines=s
report, however, fails to state any standard of care applicable to any
Appellant=s governance or supervision of the
care and treatment Everly received. 
Accordingly, Dr. Gaines=s report
does not discuss the applicable standard of care with sufficient specificity to
inform Drs. McWatt and McCall and Concentra of the conduct Everly has called
into question and to provide a basis for the trial court to conclude that her
claims against them of negligent governance and supervision have merit.  Thus, the report does not constitute a good
faith effort to comply with the statutory definition of an expert report with
respect to Everly=s claims that Drs. McWatt and
McCall and Concentra failed to timely or properly or adequately govern and/or
supervise the quality of Everly=s
medical care and surgical care and treatment.[41]  We hold, therefore, that the trial court
abused its discretion by denying Appellants= motion
to dismiss Everly=s negligent governance and
supervision claims against Drs. McWatt and McCall and Concentra.  We sustain this part of Appellants= first
issue.

Negligent Care and Treatment








Everly
further claims that each Appellant was negligent by A[f]ailing
to timely or properly or adequately provide such quality of medical care and
treatment necessary to prevent [Everly=s]
injuries.@ 
Dr. Gaines=s report states that A[t]he
literature generally available to physicians who routinely treat patients with
on the job injuries such as the physicians who work for Concentra including the
physicians in the case[,] Dr. McWatt, Dr. McCall and physician assistant (AP.A.@) Dr.
Deforest[,] [sic] indicates that the most successful treatment for RSD, which
in my opinion she exhibits, is treatment given within the first six months from
the time of the injury and after that the probability of success diminishes
significantly (see attached as Exhibit AB@ an
article which is incorporated herein as if set forth at length).@  Exhibit AB@ states
that Aearly
sympathetic block combined with physical therapy is the most widely recommended
treatment@ for RSD and that one published
article Afound
that the most important factor in predicting a favorable outcome was an
interval between onset and treatment [of RSD] of less than 6 months.@  Dr. Gaines=s report
also states that AConcentra Medical [C]enter and
Dr=s. [sic]
McWatt, McCall, and (AP.A.@)
Deforest [sic] . . . breached the applicable medical standards
of care to Ms. Everly.  Specifically,
they failed to provide treatment for RSD within the first six months of her
injury.@








Dr.
Gaines=s report
expressly states that A[w]hile at Concentra [Everly]
utilized@ Dr.
McWatt and Dr. McCall Ain the continuity of her care.@  It also recites that the standard of care for
Dr. McWatt and Dr. McCall requires that treatment for RSD be given within the
first six months from the time of the injury. 
The report further states Dr. Gaines=s
opinion that Drs. McWatt and McCall and Concentra breached that standard by
failing to provide treatment for Everly=s RSD
within the first six months of her injury.[42]  Thus, the report discusses the standards of
care specific to Drs. McWatt and McCall and Concentra and states how they
breached that standard with sufficient specificity to inform them of the
conduct Everly has called into question and to provide a basis for the trial
court to conclude that her claims of negligent care and treatment have
merit.  The report, therefore,
constitutes a good faith effort to comply with the statutory definition of an
expert report with respect to Everly=s claim
that Drs. McWatt and McCall and Concentra failed to timely or properly or
adequately provide such quality of medical care and treatment necessary to
prevent Everly=s injuries.[43]  We hold that the trial court did not abuse
its discretion by denying Appellants= motion
to dismiss Everly=s negligent care and treatment
claims against Drs. McWatt and McCall and Concentra.  We overrule this part of Appellants= first
issue.

Dr.
Gaines=s Causation Opinion

Also
within their first issue, Appellants argue that the causation opinion contained
in Dr. Gaines=s report fails to meet statutory
requirements because it Ais conclusory and fails to
detail how and in what manner the conduct of each of the Defendant health care
providers caused [Everly=s] claimed injuries.@








Section
74.351 requires an expert report to provide a fair summary of the expert=s
opinions regarding the causal relationship between the defendant=s
failure to meet the standard of care and the injury, harm, or damages claimed.[44]  To do this, the report must not be conclusory
in its explanation of causation; it must explain the basis of its statements
sufficiently to link its conclusions to the facts.[45]  And an expert report may not assert that
multiple defendants are all negligent without providing an explanation of how
each defendant=s specific breach of the
standard of care caused or contributed to the cause of injury.[46]

Dr.
Gaines=s report
sets forth his causation opinion as follows:

[The
defendants] failed to provide treatment for RSD within the first six months of
[Everly=s] injury for the
condition she was suffering, which resulted in a permanent foot drop.  This will require subsequent lifelong medical
attention and probably surgical intervention to correct the problems created by
Concentra and the physicians identified above.








. . . It is my opinion, based upon reasonable medical
certainty, my review of the records and my knowledge, skills, training and
experience, that the deviations and breaches of the applicable medical
standards of care by Concentra [M]edical [C]enter by and through its
physicians Gordon McWatt, D.O., Norman McCall, M.D. and Angela Deforest [sic],
P.A. caused Ms. Everly=s extensive damages, injuries, unnecessary
physical and mental pain and suffering.  These
deviations and breaches of the applicable medical standards of care will
further result in needless and unnecessary medical treatment and potential
surgery along with its inherent risk, medical charges, care, treatment, and
billing that would not have been required, but for these deviations and
breaches in the applicable medical standard of care.  [Emphasis added.]








Dr.
Gaines=s report
specifically states that Drs. McWatt and McCall and Concentra each failed to
treat Everly=s RSD within six months of her
injury and that this failure resulted in Everly=s
permanent foot drop.  Although Appellants
argue that the report Afails to detail how and in what
manner@ their
actions caused Everly=s claimed injury, it is enough
that Dr. Gaines set forth his opinion that their breaches in the standard of
care by delaying treatment of Everly=s RSD
for at least six months caused Everly=s
permanent foot drop.[47]  Accordingly, we hold that the report provides
a fair summary of Dr. Gaines=s
opinion regarding the causal relationship between the failures of Drs. McWatt
and McCall and Concentra to meet the standard of care and the injury, harm, or
damages claimed in this suit.[48]  We overrule this part of Appellants= first
issue.

Attorney=s Fees

In
Appellants= second issue, they contend that
the trial court erred by failing to award them attorney=s fees
under section 74.351(b)(1) of the Texas Civil Practice and Remedies Code as a
sanction for Everly=s failure to provide an expert
report as required by statute.[49]

Section
74.351(b)(1) states:

(b) If, as to a defendant physician or health care provider, an expert
report has not been served within the period specified by Subsection (a), the
court, on the motion of the affected physician or health care provider, shall,
subject to Subsection (c), enter an order that:








(1) awards to the affected physician or health care provider
reasonable attorney=s fees and costs of court incurred by the
physician or health care provider . . . .[50]

A report Ahas not
been served@ within the meaning of section
74.351(b) if it is timely but deficient following a thirty-day extension under
section 74.351(c) for the plaintiff to cure any deficiencies.[51]








Although
Everly served Dr. Gaines=s report, we have held that his
report is not an Aexpert report@ under
section 74.351 with respect to Everly=s claims
against DeForrest because Dr. Gaines=s report
does not show that he is qualified to render standard of care opinions for
DeForrest.[52]  Section 74.351(b)(1), therefore, requires
that the trial court Ashall@ award
reasonable attorney=s fees and costs of court to
DeForrest.[53]  Accordingly, we sustain Appellants= second
issue with respect to each of Everly=s claims
against DeForrest.

But we
also have held that Dr. Gaines=s report
is an Aexpert
report@ under
section 74.351 with respect to Everly=s
negligent care and treatment claims against Drs. McWatt and McCall and
Concentra.[54]  Accordingly, they are not entitled to receive
attorney=s fees and
costs of court from Everly under section 74.351(b)(1).[55]  We overrule Appellants= second
issue with respect to Everly=s claims
against Drs. McWatt and McCall and Concentra.

Conclusion

We affirm in part, reverse in part, render in
part, and remand in part.

We
reverse the trial court=s order denying Appellants= motion
to dismiss as to all claims against DeForrest, and we remand this cause to the
trial court for entry of a judgment dismissing Everly=s claims
against DeForrest and awarding reasonable attorney=s fees
and court costs to DeForrest.

We
reverse the trial court=s order denying Appellants= motion
to dismiss as to Everly=s negligent diagnosis claims and
negligent governance and supervision claims against Drs. McWatt and McCall and
Concentra and render judgment dismissing those claims with prejudice.








We
affirm the trial court=s order denying Drs. McWatt and
McCall and Concentra=s motion to dismiss as to Everly=s
negligent care and treatment claims and denying their requests for attorney=s fees
and costs, and we remand this case for further proceedings regarding those
claims.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT and MEIER, JJ.

DELIVERED:  April 1, 2010











[1]See Tex. R. App. P. 47.4.





[2]Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351 (Vernon
Supp. 2009).





[3]See id. 





[4]See id. ' 74.351(c) (AIf an expert report has
not been served . . . because elements of the report are
found deficient, the court may grant one 30‑day
extension . . . .@).





[5]See id. ' 74.351(b)(1).





[6]Id. ' 74.351(r)(6).





[7]Id. ' 74.351(l).





[8]Am. Transitional Care
Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001) (construing
former Tex. Rev. Civ. Stat. art 4590i, ' 13.01); see also Moore v. Gatica,
269 S.W.3d 134, 139B40 (Tex. App.CFort Worth 2008, pet.
denied) (applying Palacios to construction of section 74.351).





[9]Palacios, 46 S.W.3d at 879.





[10]Id. at 878.





[11]Id. at 879.





[12]Id. at 878.





[13]See Austin Heart, P.A. v.
Webb,
228 S.W.3d 276, 279 (Tex. App.CAustin 2007, no pet.) (citing  Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex.
2002)).





[14]Benish v. Grottie, 281 S.W.3d 184, 195
(Tex. App.CFort Worth 2009, pet.
denied); see also Tex. R. Evid. 703 (providing that an expert may draw
inferences from facts or data); Tex. R. Evid. 705 (providing that an expert may
testify in terms of opinions and inferences).





[15]Palacios, 46 S.W.3d at 878.





[16]Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex.
2006); Palacios, 46 S.W.3d at 877B78; Ctr. for Neurological Disorders, P.A. v.
George, 261 S.W.3d 285, 290B91 (Tex. App.CFort Worth 2008, pet. denied).





[17]Moore, 269 S.W.3d at 139, 141.





[18]Cire v. Cummings, 134 S.W.3d 835, 838B39 (Tex. 2004); Wright,
79 S.W.3d at 52 (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241B42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986)).





[19]E.I. du Pont de Nemours
& Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995); Downer, 701 S.W.2d at 242.





[20]Walker v. Packer, 827 S.W.2d 833, 840
(Tex. 1992); Ehrlich v. Miles, 144 S.W.3d 620, 624 (Tex. App.CFort Worth 2004, pet.
denied).





[21]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(r)(5).





[22]Id. ' 74.351(r)(5)(A), ' 74.401 (Vernon
2005).





[23]Id. ' 74.401(a).





[24]See id.' 74.401(a)(2) (requiring
expert to have Aknowledge of accepted
standards of medical care for the diagnosis, care, or treatment of the illness,
injury, or condition involved in the claim,@ not knowledge of the
defendant doctor=s area of speciality
(emphasis added)); see also Granbury Minor Emergency Clinic v. Thiel,
296 S.W.3d 261, 267 (Tex. App.CFort Worth 2009, no pet.); Collini v.
Pustejovsky, 280 S.W.3d 456, 464 (Tex. App.CFort Worth 2009, no
pet.); Blan v. Ali, 7 S.W.3d 741, 745B46 (Tex. App.CHouston [14th Dist.] 1999, no pet.).





[25]Ehrlich, 144 S.W.3d at 625; see
also Davisson v. Nicholson, No. 02-09-00169-CV, 2010 WL 1137031, at *7
(Tex. App.CFort Worth Mar. 25, 2010,
no pet. h.) (op. on reh=g).





[26]See Thiel, 296 S.W.3d at 267; Collini,
280 S.W.3d at 464; Blan, 7 S.W.3d at 745B46.





[27]See Tex. Civ. Prac. &
Rem. Code Ann. '' 74.351(r)(5)(A),
74.401(a)(2)‑(3); Thiel, 296 S.W.3d at 267; Ehrlich, 144
S.W.3d at 625.





[28]Tex. Occ. Code Ann. ' 204.202 (Vernon 2004).





[29]Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(r)(5)(B), ' 74.402 (Vernon
2005).





[30]Id. ' 74.402(b).





[31]See Tex. Civ. Prac. &
Rem. Code Ann. '' 74.351(r)(5)(B),
74.402.  Compare Simonson v. Keppard,
225 S.W.3d 868, 871B72 (Tex. App.CDallas 2007, no pet.)
(holding neurosurgeon was not qualified to offer expert opinion about conduct
of nurse practitioner because A[n]owhere in his affidavit does [neurosurgeon]
state that he either has knowledge of the standard of care applicable to nurse
practitioners or that he has ever worked with or supervised nurse practitioners@), and HN Tex.
Props., L.P. v. Cox, No. 02-09-00111-CV, 2009 WL 3337190, at *3B4 (Tex. App.CFort Worth Oct. 15, 2009,
no pet.) (mem. op.) (holding physician was not qualified to offer expert
opinion about nursing standards because his Areport and curriculum vitae demonstrate that he
has experience and expertise as an internal medicine physician and as a medical
administrator, but there is nothing in his report or curriculum vitae
demonstrating or explaining that he has knowledge of or is familiar with the
accepted standard of care in this case for nurses or that he is qualified on
the basis of training or experience to offer an expert opinion regarding the
accepted standard of care in this case for nurses@), with San Jacinto
Methodist Hosp. v. Bennett, 256 S.W.3d 806, 814 (Tex. App.CHouston [14th Dist.]
2008, no pet.) (holding physician was qualified to offer expert opinion
regarding nursing care of decubitus ulcers because his report Aspecifically stated >I am familiar with the
standard of care for both nurses and physicians for the prevention and
treatment of decubitus ulcers=@).





[32]See Cox, 2009 WL 3337190, at *4; Wright,
79 S.W.3d at 53.





[33]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.402(b).





[34]See Gardner v. U.S.
Imaging, Inc., 274 S.W.3d 669, 671B72 (Tex. 2008) (AWhen a party=s alleged health care
liability is purely vicarious, a report that adequately implicates the actions
of that party=s agents or employees is
sufficient.@).





[35]See id.





[36]See id.





[37]Benish, 281 S.W.3d at 198; Thomas
v. Alford, 230 S.W.3d 853, 858 (Tex. App.CHouston [14th Dist.]
2007, no pet.).





[38]Compare In re Stacy K. Boone,
P.A., 223 S.W.3d 398, 405B06 (Tex. App.CAmarillo 2006, no pet.) (holding report
sufficiently set forth single standard of care applied to physicians and
physician assistant because all participated in administering treatment), and
Barber v. Dean, No. 02-07-00353-CV, 2009 WL 3490952, at *10 (Tex. App.CFort Worth Oct. 29, 2009,
no pet.) (AThe report is not
insufficient for >grouping= Appellees together
because Dr. Wagner specifically states that they all owed the same duty to
ensure the proper positioning and padding of Malcolm=s arm.@), with Polone
v. Shearer, 287 S.W.3d 229, 235 (Tex. App.CFort Worth 2009, no pet.)
(holding report that set forth single standard of care applicable to physician
and physician assistant insufficient to represent a good faith effort because A[a]lthough the standards
of care might be the same for both [the physician and physician assistant], the
report does not specifically state as much@). 





[39]Polone, 287 S.W.3d at 233B34; Taylor v. Christus
Spohn Health Sys. Corp., 169 S.W.3d 241, 244 (Tex. App.CCorpus Christi 2004, no
pet.); see also Wood v. Tice, 988 S.W.2d 829, 831 (Tex. App.CSan Antonio 1999, pet.
denied) (stating that the report must specifically refer to the defendant and
discuss how that defendant breached the applicable standard of care). 





[40]See Palacios, 46 S.W.3d at 878.





[41]See George, 261
S.W.3d at 292B93.





[42]See Barber, 2009 WL 3490952, at *10
(holding that the same standard of care may apply to more than one defendant if
they owe the same duty to the patient); see also Polone, 287 S.W.3d at
235.





[43]See George, 261
S.W.3d at 292B93.





[44]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(r)(6).





[45]Polone, 287 S.W.3d at 236; see
Wright, 79 S.W.3d at 52B53; see also Arkoma Basin Exploration Co. v.
FMF Assocs. 1990‑A, Ltd., 249 S.W.3d 380, 389B90 n.32 (Tex. 2008)
(defining conclusory as A[e]xpressing a factual
inference without stating the underlying facts on which the inference is based@). 





[46]Polone, 287 S.W.3d at 233B34; Taylor, 169
S.W.3d ay 244.





[47]Compare Thiel, 296 S.W.3d at 273 (AIt is enough that Dr.
Spangler opined that Dr. Salas=s breaches of the standard of care delayed the
diagnosis of Thiel=s appendicitis so that
Thiel=s appendix ruptured after
Dr. Salas=s September 6, 2006
examination and caused Thiel=s colon to become gangrenous.@), and Simonson,
225 S.W.3d at 875B76 (holding causation
opinion not conclusory where ADr. Thomas explained in his report that an early
diagnosis [of cerebellar infarction or hemorrhage] would have either prevented
neurological deterioration or at least Keppard would have been admitted into
the hospital where life‑saving measures could have been taken to save her
life@), with Estorque
v. Schafer, 302 S.W.3d 19, 28 (Tex. App.CFort Worth 2009, no pet.) (holding that the
expert report was not sufficient because ADr. Miller=s report does not explain the basis of his
opinions as to causation; his report leaves gaps by not explaining how or why
the physicians= failure to consult a
urologist or gynecologist caused worsening or progression of Shirley=s listed conditions@).





[48]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(r)(6).





[49]Aviles v. Aguirre, 292 S.W.3d 648, 648
(Tex. 2009) (enforcing mandatory attorney=s fees award under former Texas Revised Civil
Statute article 4590i and noting similar mandatory provision under Texas Civil
Practice and Remedies Code ' 74.351(b)(1)).





[50]Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(b)(1) (emphasis
added).





[51]Lewis v. Funderburk, 253 S.W.3d 204, 207B08 (Tex. 2008) (holding
that Aan expert report has not
been served@ within the meaning of
section 74.351(b) when an inadequate report has been served following a 30-day
extension under section 74.351(c)); see also Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351(c) (AIf an expert report has
not been served within the period specified by Subsection (a) because elements
of the report are found deficient, the court may grant one 30‑day
extension to the claimant in order to cure the deficiency.@).





[52]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(r)(6); Palacios,
46 S.W.3d at 878.





[53]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(b)(1).





[54]See id. ' 74.351(l).





[55]See id. ' 74.351(b)(1).